No. 22-5312

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NIKKI BOLLINGER GRAE;
LUVELL L. GLANTON; AMALGAMATED BANK
(AS TRUSTEE FOR THE LONGVIEW COLLECTIVE INVESTMENT FUND);
*Plaintiffs–Appellees*;
&
MARIE NEWBY,
*Intervenor–Appellant*;
v.

CORRECTIONS CORPORATION OF AMERICA;
DAMON T. HININGER; DAVID M. GARFINKLE;
TODD J. MULLENGER; HARLEY G. LAPPIN;
*Defendants–Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

# BRIEF OF *AMICI CURIAE*
## THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND
## 10 MEDIA ORGANIZATIONS
## IN SUPPORT OF INTERVENOR–APPELLANT
## SEEKING VACATUR

Paul R. McAdoo
   *Counsel of Record for Amici Curiae*
Katie Townsend*
Charles Hogle*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
T: (202) 795-9300
F: (202) 795-9310
*Of Counsel

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 22-5312          Case Name: Grae v. Corrections Corp. of America

Name of counsel: Paul R. McAdoo

Pursuant to 6th Cir. R. 26.1, 10 media organizations listed on the following page

*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
    in the outcome?  If yes, list the identity of such corporation and the nature of the financial
    interest:

    No.

---

## CERTIFICATE OF SERVICE

I certify that on _____ July 15, 2022 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Paul R. McAdoo

Reporters Committee

1156 15th St. NW,  Ste. 1020, Wash., D.C.

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

Reporters Committee for Freedom of the Press
The Daily Memphian
Institute for Public Service Reporting
Michigan Press Association
National Press Club Journalism Institute
National Press Club
Tennessee Association of Broadcasters
Tennessee Coalition for Open Government
Tennessee Lookout
WPLN, Nashville Public Radio

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 22-5312        Case Name: Grae v. Corrections Corp. of America

Name of counsel: Paul R. McAdoo

Pursuant to 6th Cir. R. 26.1, Graham Media Group, Michigan, Inc. d/b/a WDIV-TV
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

Graham Media Group, Michigan, Inc. is a wholly owned subsidiary of Graham Media Group, Inc. a Delaware corporation which is owned by a public company, Graham Holdings Company.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on                    July 15, 2022                    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Paul R. McAdoo

Reporters Committee

1156 15th St. NW,  Ste. 1020, Wash., D.C.

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Table of Authorities ................................................................. vi

Identity and Interest of *Amici Curiae* .................................... 1

Source of Authority to File ...................................................... 2

Fed. R. App. P. 29(a)(4)(E) Statement .................................... 3

Introduction ............................................................................. 4

Argument ................................................................................. 5

    I.    The press and public have a presumptive right of access to judicial records. ............................................................................... 5

    II.   When a district court seals judicial records, it must set forth specific findings demonstrating that sealing is necessitated by— and narrowly tailored to—a compelling interest in nondisclosure. .......... 7

    III.  The district court did not specifically set forth its reasons for sealing the records at issue or for denying Ms. Newby's motion to unseal them. ......................................................................... 10

    IV.  To the extent the district court treated Ms. Newby's motion to unseal as a motion for reconsideration of interlocutory orders, it applied the wrong legal standard. ......................................... 12

    V.   The presumptive right of access is especially strong in this case. .......... 14

Conclusion ............................................................................. 17

Certificate of Compliance ...................................................... 18

Appendix: Supplemental Statements of Identity of *Amici Curiae* ......... 19

Certificate of Service ............................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Baxter Int'l, Inc. v. Abbott Lab'ys,*
    297 F.3d 544 (7th Cir. 2002) ................................................. 9

*Beauchamp v. Fed. Home Loan Mortg. Corp.,*
    658 F. App'x 202 (6th Cir. 2016) ........................................ 6

*Brown & Williamson Tobacco Corp. v. F.T.C.,*
    710 F.2d 1165 (6th Cir. 1983) ..................................... 5, 6, 9

*F.T.C. v. AbbVie Prods. LLC,*
    713 F.3d 54 (11th Cir. 2013) ............................................. 13

*In re Cendant Corp.,*
    260 F.3d 183 (3d Cir. 2001) .............................................. 13

*In re Knoxville News-Sentinel Co.,*
    723 F.2d 470 (6th Cir. 1983) .............................................. 8

*In re Nat'l Prescription Opiate Litig.,*
    927 F.3d 919 (6th Cir. 2019) ..................................... *passim*

*Larry Pitt & Assocs. v. Lundy Law, LLP,*
    346 F. Supp. 3d 761 (E.D. Pa. 2018) ............................... 14

*Lipman v. Budish,*
    974 F.3d 726 (6th Cir. 2020) ....................................... 6, 14

*Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.,*
    590 F.3d 381 (6th Cir. 2009) ............................................ 12

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980) ...................................................... 1, 5

*Rudd Equip. Co. v. John Deere Constr. & Forestry Co.,*
    834 F.3d 589 (6th Cir. 2016) ..................................... *passim*

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.,*
    825 F.3d 299 (6th Cir. 2016) ..................................... *passim*

*Sheppard v. Maxwell,*
    384 U.S. 333 (1966) .......................................................... 1

*United States v. ISS Marine Servs., Inc.*,
  905 F. Supp. 2d 121 (D.D.C. 2012) .................................................. 14

**Other Authorities**

Charlie Savage, *U.S. to Phase Out Use of Private Prisons for Federal Inmates*, N.Y. Times (Aug. 18, 2016),
  https://perma.cc/YSZ8-7M8R .......................................................... 16

Eduardo Porter, *Prisons Run by C.E.O.s? Privatization Under Trump Could Carry a Heavy Price*, N.Y. Times (Jan. 10, 2017),
  https://perma.cc/875K-BJZT ............................................................ 16

Eli Hager & Alysia Santo, *Private Prisoner Vans' Long Road of Neglect*,
  N.Y. Times (July 6, 2016),
  https://perma.cc/J55G-N5AY ........................................................... 16

Maria Sacchetti, *Inspector general, ICE clash over conditions at immigration detention facility in New Mexico*, Wash. Post (Mar. 18, 2022),
  https://perma.cc/ZAZ5-SX9B ........................................................... 16

Rebecca Boone, *Prison company CCA to pay Idaho $1M over staffing*,
  Idaho News (Feb. 4, 2014),
  https://perma.cc/BP45-AVNY ........................................................... 16

Sari Horwitz et al., *Inside the opioid industry's marketing machine*, Wash. Post (Dec. 6, 2019),
  https://perma.cc/73EP-8QH8 .............................................................. 7

Timothy Williams & Richard A. Oppel Jr., *Escapes, Riots and Beatings. But States Can't Seem to Ditch Private Prisons.*, N.Y. Times (Apr. 10, 2018),
  https://perma.cc/F8M3-H6A2 ........................................................... 16

Travis Loller, *CoreCivic to settle shareholders lawsuit for $56 million*, AP News (Apr. 19, 2021),
  https://bit.ly/3IHMCve ................................................................... 16

## IDENTITY AND INTEREST
## OF *AMICI CURIAE*

*Amici curiae* are: the Reporters Committee for Freedom of the Press;

Graham Media Group, Michigan, Inc. d/b/a WDIV-TV; the Institute for Public

Service Reporting; Memphis Fourth Estate, Inc. d/b/a Daily Memphian; the

Michigan Press Association; Nashville Public Radio; the National Press Club; the

National Press Club Journalism Institute; the Tennessee Coalition for Open

Government; the Tennessee Association of Broadcasters; and the Tennessee

Lookout. A supplemental statement of the identities and interests of amici curiae

is appended below.

*Amici* file this brief in support of Intervenor Marie Newby. As members and

representatives of the news media, *amici* know the importance of the public's

constitutional and common law rights to inspect judicial records—rights the press

regularly relies on for purposes of newsgathering and reporting. As the Supreme

Court has put it, members of the media function as "surrogates for the public,"

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980), and "[a]

responsible press has always been regarded as the handmaiden of effective judicial

administration," *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966). To that end,

members of the news media, including *amici*, often seek to vindicate the public's

presumptive rights of access to judicial records by filing motions to unseal in cases

where they are not a party, and by filing *amicus* briefs, like this one.

## SOURCE OF AUTHORITY TO FILE

*Amici* have moved for leave to file this brief by the accompanying motion pursuant to Federal Rule of Appellate Procedure 29(a)(3).

## FED. R. APP. P. 29(A)(4)(E) STATEMENT

*Amici* declare that: (1) no party's counsel authored the brief in whole or in part; (2) no party or party's counsel contributed money intended to fund preparing or submitting the brief; and (3) no person, other than *amici*, their members or their counsel, contributed money intended to fund preparing or submitting the brief.

## INTRODUCTION

This appeal arises from a class action lawsuit against CoreCivic, a company that operates private detention facilities under contracts with states and the federal Bureau of Prisons ("BOP"). The plaintiff class—investors in the company—sued CoreCivic for misrepresenting both its poor track record in prisoner safety and the extent to which that track record would affect its future business with BOP.

While the class action against CoreCivic was being litigated, the district court sealed numerous judicial records. After the parties settled, Intervenor-Appellant Marie Newby moved to unseal many of those records. Ms. Newby is the plaintiff in a separate lawsuit against CoreCivic in which she alleges that CoreCivic's chronic understaffing of one of its Tennessee prisons led to her son's death at the hands of his cellmate.

In support of her motion to unseal, Ms. Newby correctly argued that the public has a presumptive right of access to the records at issue. And, indeed, this Court has made it abundantly clear that the public has a presumptive right of access to judicial records filed in civil matters. Nevertheless, the district court largely denied Ms. Newby's motion.

In doing so, the district court did not apply the rigorous constitutional and common law standards that govern sealing. When a district court orders judicial records placed under seal, it must explain why. Specifically, it must identify a

compelling interest that justifies withholding the records (or portions thereof) from the public; explain why that interest overcomes the public's strong interest in access; and establish that the sealing in question is narrowly tailored (*i.e.*, that it goes no further than necessary to serve the identified compelling interest). The district court's order denying Ms. Newby's motion does not meet these requirements. It also appears to erroneously equate Ms. Newby's motion to unseal with a motion for reconsideration. Each error contravenes this Court's precedent and undermines the ability of the public, including the press, to fully monitor the judicial system. For the reasons herein, *amici* urge this Court to vacate the order.

## ARGUMENT

### I. The press and public have a presumptive right of access to judicial records.

This Court has long recognized that public access to judicial records is a fundamental and indispensable feature of our legal system. *See Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983) ("The English common law, the American constitutional system, and the concept of the 'consent of the governed' stress the 'public' nature of legal principles and decisions."); *id.* (noting that openness "has been a fundamental feature of the American judicial system"). Among other things, public access "provides a check on courts," *id.* at 1178, and "promote[s] 'true and accurate fact finding,'" *id.* (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596 (1980)

(Brennan, J., concurring)).  Moreover, as the Court recognized in *Brown &*
*Williamson*, the public "has an interest in ascertaining what evidence and records"
underlie judicial decisions, *id.* at 1181, and permitting the public "to review the
facts presented to the court" is essential to public confidence in, and oversight of,
the administration of justice, *id.* at 1178.  *See also id.* at 1177 ("[C]ourt records
often provide important, sometimes the only, bases or explanations for a court's
decision.").

This Court has recently and repeatedly confirmed the "strong presumption in
favor of openness" it recognized in *Brown & Williamson, id.* at 1179, holding that
"[o]nly the most compelling reasons can justify [the] non-disclosure" of judicial
records,[1] *Lipman v. Budish*, 974 F.3d 726, 752 (6th Cir. 2020) (citation omitted).
*See also, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 940 (6th Cir.
2019) (vacating insufficiently explained sealing orders and instructing district court
to "bear in mind that the party seeking to file under seal must provide a compelling
reason to do so and demonstrate that the seal is narrowly tailored to serve that
reason" (citation and internal quotation marks omitted)); *Shane Grp., Inc. v. Blue*
*Cross Blue Shield of Mich.*, 825 F.3d 299, 307 (6th Cir. 2016) (vacating sealing

---

[1]     This issue is so important that the Court has raised it *sua sponte* on at least
two occasions.  *Beauchamp v. Fed. Home Loan Mortg. Corp.*, 658 F. App'x 202,
207 (6th Cir. 2016); *Brown & Williamson*, 710 F.2d at 1176 ("Because of its
importance, we reach the [sealing] question on our own motion.").

orders when "the parties and the district court plainly conflated the standards for entering a protective order . . . with the vastly more demanding standards for sealing off judicial records from public view"); *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593–94 (6th Cir. 2016) (affirming district court's decision to vacate its own sealing order when order was unsupported by specific findings and conclusions).

Access to court records, whether in criminal or civil cases, is critical to news reporting on our judicial system and the disputes it adjudicates. *See, e.g.*, Sari Horwitz et al., *Inside the opioid industry's marketing machine*, Wash. Post (Dec. 6, 2019), https://perma.cc/73EP-8QH8 (relying on unsealed court records to report on marketing practices of Purdue Pharma during the opioid crisis). This Court's jurisprudence on sealing court records protects that important interest by ensuring that court records are withheld from the public only in exceptional circumstances.

## II. When a district court seals judicial records, it must set forth specific findings demonstrating that sealing is necessitated by—and narrowly tailored to—a compelling interest in nondisclosure.

Drawing on both the common law and the First Amendment, this Court has placed strict limits on whether, and to what extent, a district court may place judicial records under seal. *Rudd Equip.*, 834 F.3d at 593. Though a decision to seal judicial records is a matter of the district court's discretion, *id.*, because sealing involves such "important rights," it "is not accorded the traditional scope of

narrow review" that discretionary decisions typically enjoy, *id.* (citations and internal quotation marks omitted). Put differently, this Court's limitations on the sealing of judicial records are not themselves discretionary: when a district court fails to adhere to them, it commits a legal error and therefore abuses its discretion. *Id.*; *Shane Grp.*, 825 F.3d at 306.

As noted above, a judicial record may be sealed, entirely or in part, only when necessary to serve a compelling interest in nondisclosure. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 939; *Shane Grp.*, 825 F.3d at 305 ("Only the most compelling reasons can justify non-disclosure of judicial records." (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983))). The proponent of sealing bears the burden of demonstrating both that a compelling interest exists and that it overcomes the public's right of access. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 939. This burden, never light, grows heavier in proportion to the public's interest in overseeing the litigation. *Id.*

Even when a compelling interest in nondisclosure overcomes the presumption of openness, judicial records may be sealed only to the extent necessary to serve that interest. *Id.* In other words, sealing must be "narrowly tailored": a judicial record may not be sealed in its entirety when targeted redactions will do. *Shane Grp.*, 825 F.3d at 305. "The proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy,

providing reasons and legal citations.'" *Id.* at 305–06 (quoting *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th Cir. 2002)); *see also id.* at 308 (explaining that those seeking closure must "demonstrate—on a document-by-document, line-by-line basis—that specific information in the court record meets the demanding requirements for a seal").

"When a district court opts to seal court records, it must set forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Rudd Equip.*, 834 F.3d at 594 (quoting *Brown & Williamson*, 710 F.2d at 1176). This requirement applies even when all parties agree to a record's sealing. *Shane Grp.*, 825 F.3d at 306 ("[A] court's obligation to explain the basis for sealing court records is independent of whether anyone objects to it."). A sealing order that does not specifically explain the district court's findings and conclusions frustrates meaningful review and is "*ipso facto*" an abuse of discretion. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 939; *see also Shane Grp.*, 825 F.3d at 306 ("[A] court's failure to set forth those reasons—as to why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary—is itself grounds to vacate an order to seal.").

**III.    The district court did not specifically set forth its reasons for sealing the records at issue or for denying Ms. Newby's motion to unseal them.**

In the Order for Continued Sealing, the district court did not "set forth specific findings and conclusions," *Rudd Equip.*, 834 F.3d at 594, explaining "why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary," *Shane Grp.*, 825 F.3d at 306.  The district court correctly observed that "[t]he public's interests in accessing the materials at issue in this case are stronger than in most ordinary litigation between private parties, meaning that the bar for justifying a seal is higher."  Order for Continued Sealing, R. No. 494, Page ID #26212.  The district court did not, however, explain why sealing remained justified at the time of Ms. Newby's motion.  Instead, the district court incorporated by reference the justifications underlying its "initial seal determinations," *id.*, concluding that Ms. Newby "ha[d] not identified persuasive reasons for revisiting" its "original sealing decisions," *id.* at Page ID #26213–26214.

The district court's "initial seal determinations"—*i.e.*, the orders originally permitting the parties to file documents under seal—themselves do not "set forth specific findings and conclusions which justify nondisclosure to the public." *Rudd Equip.*, 834 F.3d at 594 (citation and internal quotation marks omitted).  On the contrary, they are largely perfunctory—and as this Court has explained, a district court cannot rely on a perfunctory order when deciding a sealing issue.  *Shane*

*Grp.*, 825 F.3d at 306–07.  For example, in response to many of the parties'

motions to seal, the district court simply filed on the docket a copy of the first page

of the motion, with the words "Motion GRANTED" and the judge's signature

stamped in the upper right-hand corner.  *See, e.g.*, R. No. 432, Page ID #24390; R.

No. 415, Page ID #23861; R. No. 414, Page ID #23860; R. No. 372, Page ID

#17667; R. No. 371, Page ID #17666; R. No. 369, Page ID #17662; R. No. 368,

Page ID #17661.  In other instances, the district court issued orders granting a

party's motion to seal while stating, without explanation, that the record at issue

would be made public on a date certain unless the party filed an additional motion

for continued sealing.  *See, e.g.*, R. No. 375, Page ID #17753; R. No. 370, Page ID

#17665.

Thus, far from justifying its denial of Ms. Newby's motion to unseal, the

district court's initial sealing determinations are themselves "*ipso facto*" abuses of

discretion.  *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 939.  Neither they

nor the Order for Continued Sealing provide a basis for the continued sealing of

any of the judicial records filed below.  *Id.*; *see also Shane Grp.*, 825 F.3d at 306

(noting district court's "obligation to explain the basis for sealing court records");

*Rudd Equip.*, 834 F.3d at 594 ("[T]he district court erred in failing to make any

findings or legal conclusions in support of the initial seal.").

**IV. To the extent the district court treated Ms. Newby's motion to unseal as a motion for reconsideration of interlocutory orders, it applied the wrong legal standard.**

The Order for Continued Sealing characterizes Ms. Newby's motion as "the equivalent of a motion to intervene for the purpose of asking the court to reconsider [its] earlier [sealing] determinations."  R. No. 494, Page ID #26211–26212.  The Order for Continued Sealing then states that Ms. Newby's "briefing gives the court no persuasive reason to conclude that its earlier rulings were generally erroneous."  *Id.* at Page ID #26213.  These statements suggest that the district court might have decided Ms. Newby's motion under the standard for reconsideration of interlocutory orders.  *See, e.g.*, *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) ("[C]ourts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." (citation omitted)).  If it did, it erred as a matter of law.

First, the Order for Continued Sealing does not cite, and *amici* are not aware of, any opinion—of this Court or any other federal court of appeals—applying the motion for reconsideration standard to an intervenor's motion to unseal.  And for good reason: an intervenor's motion to unseal is not the same as a motion for reconsideration.  An intervenor's motion to unseal seeks to enforce "[a] court's

obligation to keep its records open for public inspection." *Shane Grp.*, 825 F.3d at 307. This obligation is not "conditioned on an objection from anybody." *Id.* And because ensuring public access to judicial records is an obligation of the court, not just that of an interested party or intervenor, "an argument against sealing [is not] the kind of argument that can be waived." *Id.* As such, an argument in favor of unsealing may be raised at any time, whether before the entry of final judgment or long after it. *See id.* (rejecting argument that motion to unseal was untimely).

Second, the Order for Continued Sealing does not cite, and *amici* are not aware of, any opinion—of this Court or any other federal court of appeals—holding that an intervenor seeking access to sealed records bears the burden of establishing that the district court's decision to seal the records was "generally erroneous." R. No. 494, Page ID #26213. Quite the opposite: it is widely recognized that changed circumstances may make unsealing appropriate even when a district court's initial sealing order was not erroneous at the time of its entry. *See, e.g.*, *In re Cendant Corp.*, 260 F.3d 183, 196 (3d Cir. 2001) ("Even if a sealing order was proper at the time when it was initially imposed, the sealing order must be lifted at the earliest possible moment when the reasons for sealing no longer obtain."); *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 71 (11th Cir. 2013) (holding district court did not abuse its discretion when "[i]t found that the passage of time had altered the balance enough so that the value of public access to [the

sought records] exceeded the value of confidentiality"); *Larry Pitt & Assocs. v. Lundy Law, LLP*, 346 F. Supp. 3d 761, 769 (E.D. Pa. 2018) (explaining that the passage of time had made the sealed information "clearly stale information which removes any claim of protection"); *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 141 (D.D.C. 2012) ("[T]he mere fact that a case was, at one time, placed under seal is not a reason, in and of itself, to indefinitely maintain that seal and thus negate the public's access to judicial records . . . ."). Thus, to the extent the district court applied the legal standard governing motions for reconsideration of interlocutory orders below, it committed legal error.

## V. The presumptive right of access is especially strong in this case.

The presumption of public access to judicial records is always strong. This is because the public inevitably has a strong interest in knowing how and why the judicial power is exercised. *See Lipman*, 974 F.3d at 753 ("The public has a strong interest in obtaining the information contained in the court record, which includes an interest in ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions." (citation and internal quotation marks omitted)); *Rudd Equip.*, 834 F.3d at 593 ("[T]he resolution of private disputes frequently involves issues and remedies affecting third parties or the general public, and secrecy serves only to insulate the participants, mask

impropriety, obscure incompetence, and conceal corruption." (citation omitted) (cleaned up)).

Here, the public's interest is even stronger than usual, for two reasons. First, the matter below was a class action. In class actions, "by definition[,] some members of the public are also parties to the case." *Shane Grp.*, 825 F.3d at 305 (citation omitted) (cleaned up). Such parties "cannot participate meaningfully in" the settlement process "unless they can review the bases of the proposed settlement and the other documents in the court record." *Id.* at 309. Accordingly, this Court has held that "the standards for denying public access to the record" in class actions "should be applied . . . with particular strictness." *Id.* at 305 (citation omitted).

Second, this matter involves the federal government's practice of contracting with private companies to house and administer the nation's prison population—a topic of legitimate public interest and debate,[2] and one that has received extensive news coverage. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 939 (noting

---

[2]    The district court correctly recognized as much. "CoreCivic is a public contractor accused of misrepresenting the quality of services it provided in exchange for public funds," wrote the district court. Order for Continued Sealing, R. No. 494, Page ID #26212. "Moreover, CoreCivic is responsible for the ongoing health, safety, and sec[ur]ity of the many individuals detained in its facilities. There are therefore strong, legitimate public interests in information regarding its operations and shortcomings, in addition to the ever-present public interest in transparent court proceedings." *Id.*

that burden to justify sealing grows heavier in proportion to the public's interest in subject matter of litigation); *see also, e.g.*, Travis Loller, *CoreCivic to settle shareholders lawsuit for $56 million*, AP News (Apr. 19, 2021), https://bit.ly/3IHMCve; Rebecca Boone, *Prison company CCA to pay Idaho $1M over staffing*, Idaho News (Feb. 4, 2014), https://perma.cc/BP45-AVNY; Maria Sacchetti, *Inspector general, ICE clash over conditions at immigration detention facility in New Mexico*, Wash. Post (Mar. 18, 2022), https://perma.cc/ZAZ5-SX9B; Timothy Williams & Richard A. Oppel Jr., *Escapes, Riots and Beatings. But States Can't Seem to Ditch Private Prisons.*, N.Y. Times (Apr. 10, 2018), https://perma.cc/F8M3-H6A2; Eduardo Porter, *Prisons Run by C.E.O.s? Privatization Under Trump Could Carry a Heavy Price*, N.Y. Times (Jan. 10, 2017), https://perma.cc/875K-BJZT; Charlie Savage, *U.S. to Phase Out Use of Private Prisons for Federal Inmates*, N.Y. Times (Aug. 18, 2016), https://perma.cc/YSZ8-7M8R; Eli Hager & Alysia Santo, *Private Prisoner Vans' Long Road of Neglect*, N.Y. Times (July 6, 2016), https://perma.cc/J55G-N5AY. Reporting derived from access to the judicial records at issue in this case would therefore serve to increase public understanding of an issue of national importance: the operation of the penal system.

# CONCLUSION

For the reasons stated above, *amici* respectfully urge this Court to vacate the district court's Order for Continued Sealing, R. No. 494.

Respectfully submitted,

Date: July 15, 2022

/s/Paul R. McAdoo
Paul R. McAdoo
   *Counsel of Record for Amici Curiae*
Katie Townsend*
Charles Hogle*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
*Of Counsel*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1), it contains 3,483 words.

This brief complies with Federal Rule of Appellate Procedure 32(a)(5)–(6) because it is set in 14-point Times New Roman, a proportionally spaced typeface, and was prepared using Microsoft Word for Mac (version 16.61).

Respectfully submitted,

Date: July 15, 2022

*/s/*Paul R. McAdoo

Paul R. McAdoo
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
*Counsel for Amici Curiae*

## APPENDIX:
## SUPPLEMENTAL STATEMENTS OF
## IDENTITY OF *AMICI CURIAE*

**The Reporters Committee for Freedom of the Press** is an unincorporated nonprofit association. The Reporters Committee was founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

**Graham Media Group, Michigan, Inc. d/b/a WDIV-TV** is Detroit's market leader in news, weather and original local programming. WDIV-TV ranks in the top three NBC affiliates among the largest 40 markets nationwide. Ninety-five percent of Metro Detroiters watch WDIV-TV at least once a week. The channel's website, and ClickOnDetroit.com is the most visited TV website in Michigan and usually ranks in the top three news and information sites for the state. WDIV-TV has been honored with Edward R. Murrow Awards, the NAB Service to America Award, Michigan Emmys, and the Michigan Association of Broadcasters Station of the Year Award.

**The Institute for Public Service Reporting** at the University of Memphis is a professionally staffed newsroom dedicated to civic-minded journalism. The

Institute's robust, independent investigative reporting and in-depth explanatory journalism aims to promote a vibrant democracy, foster inclusiveness, and enrich the lives of the people of Greater Memphis, including its many underserved communities. The Institute does this while providing hands-on training to university students who will become our community's next generation of journalists.

**Memphis Fourth Estate, Inc. d/b/a Daily Memphian** is a nonprofit daily online publication covering news in the Memphis area.

**The Michigan Press Association**, founded in 1868, is the official trade association for more than 300 print and digital newspapers in Michigan and dedicated to promoting the freedom of the press throughout the State. The MPA's members report on issues of importance to Michiganders, including national stories.

**Nashville Public Radio** provides Middle Tennessee with trusted in-depth news, engaging music, and unique cultural programs. Among other stations, Nashville Public Radio operates WPLN, Nashville's source for local news and NPR.

**The National Press Club** is the world's leading professional organization for journalists. Founded in 1908, the Club has 3,100 members representing most major news organizations. The Club defends a free press worldwide. Each year, the

Club holds over 2,000 events, including news conferences, luncheons and panels, and more than 250,000 guests come through its doors.

**The National Press Club Journalism Institute** is the non-profit affiliate of the National Press Club, founded to advance journalistic excellence for a transparent society. A free and independent press is the cornerstone of public life, empowering engaged citizens to shape democracy. The Institute promotes and defends press freedom worldwide, while training journalists in best practices, professional standards and ethical conduct to foster credibility and integrity.

**The Tennessee Coalition for Open Government** ("TCOG") is a Tennessee-based advocacy group that seeks to preserve, protect and improve citizen access to public information and open government in Tennessee through an alliance of citizens, journalists and civic groups. TCOG's mission rests on the belief that access to government information, through public records and public meetings, is crucial in allowing informed citizen participation in a democratic society.

**The Tennessee Association of Broadcasters** is a voluntary association of radio and television broadcast stations located in Tennessee, organized and existing as a not-for-profit Tennessee corporation. Its purpose includes promoting a high standard of public service among Tennessee broadcast stations, fostering cooperation with governmental agencies in all matters pertaining to national

defense and public welfare, and encouraging customs and practices in the best interest of the broadcasting industry and the public it serves.

**The Tennessee Lookout** provides news reporting on Tennessee politics and policy.  It is part of States Newsroom, a national 501(c)(3) nonprofit supported by grants and a coalition of donors and readers.

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I used the appellate CM/ECF system to electronically file the foregoing with the United States Court of Appeals for the Sixth Circuit, which caused a Notice of Docket Activity to be sent to all attorneys registered in this case. *See* 6th Cir. R. 25(f)(1)(A).

Respectfully submitted,

Date: July 15, 2022

/s/Paul R. McAdoo

Paul R. McAdoo
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
*Counsel of Record for Amici Curiae*