## No. 22-5312

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nikki Bollinger Grae, Luvell L. Glanton; Amalgamated Bank, as Trustee for the
LongView Collective Investment Fund,

*Plaintiff-Appellee,*

and

Marie Newby,

*Proposed Intervenor-Appellant*,

v.

Corrections Corporation of America, *et al.*,

*Defendants-Appellees.*

On Appeal from United States District Court for the Middle District of Tennessee,
No. 3:16-cv-2267

## SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLEE
## CORRECTIONS CORPORATION OF AMERICA

Brian T. Glennon
Eric C. Pettis
Michael A. Galdes
LATHAM & WATKINS LLP
355 S. Grand Ave.
Suite 100
Los Angeles, CA  90071
(213) 485-1234

Steven A. Riley
Milton S. McGee, III
RILEY & JACOBSON, PLC
1906 West End Ave.
Nashville, TN  37203
(615) 320-3700

Roman Martinez
Christina Gay*
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2207

*\* Not admitted to practice in Washington,
DC.  Admitted in Illinois.  All work
supervised by a member of the DC Bar.*

*Counsel for Defendant-Appellee CoreCivic, Inc.
f/k/a Corrections Corporation of America*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................1

BACKGROUND ...................................................................................1

ARGUMENT ........................................................................................5

I.    TARDY LACKS STANDING TO INTERVENE ON APPEAL ...................5

   A.    A Proposed Intervenor Must Prove That He Suffered A
         Concrete And Particularized Harm To Continue An Action On
         His Own....................................................................................5

   B.    Tardy's Public-Right Theory Of Standing Does Not Establish
         An Injury In Fact .......................................................................8

   C.    Tardy Cannot Establish An Injury In Fact Based On Any
         Purported Litigation Interest ...................................................10

   D.    Tardy's Counterarguments Lack Merit .............................................14

II.   TARDY'S LACK OF STANDING UNDERSCORES WHY
      PERMISSIVE INTERVENTION SHOULD BE DENIED ..........................19

CONCLUSION ....................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*,
332 F.3d 983 (6th Cir. 2003) ............................................................................. 10

*Arizona Christian School Tuition Organization v. Winn*,
563 U.S. 125 (2011) ...................................................................................... 15

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) ........................................................................................ 9

*Baird v. Norton*,
266 F.3d 408 (6th Cir. 2001) ....................................................................... 7, 9

*Bond v. Utreras*,
585 F.3d 1061 (7th Cir. 2009) ...................................................................... 20

*Bradley v. Milliken*,
828 F.2d 1186 (6th Cir. 1987) ...................................................................... 20

*Brown v. Advantage Engineering, Inc.*,
960 F.2d 1013 (11th Cir. 1992) ............................................................... 12, 16

*Brown & Williamson Tobacco Corp. v. FTC*,
710 F.2d 1165 (6th Cir. 1983) ...................................................................... 12

*Buchholz v. Meyer Njus Tanick, PA*,
946 F.3d 855 (6th Cir. 2020) ........................................................................ 13

*Center for Powell Crossing, LLC v. Ebersole*,
696 F. App'x 702 (6th Cir. 2017) .................................................................... 8

*Chapman v. Tristar Products, Inc.*,
940 F.3d 299 (6th Cir. 2019) .................................................................. 5, 7, 13

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ........................................................................... 11, 13, 14

*Club v. United States EPA*,
793 F.3d 656 (6th Cir. 2015) ..................................................................... 6, 13

*Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.à.r.l*,
790 F.3d 411 (2d Cir. 2015) ....................................................................... 8, 11

**Page(s)**

*Crawford v. United States Department of the Treasury*,
    868 F.3d 438 (6th Cir. 2017) ...................................................................8

*Deus v. Allstate Insurance Co.*,
    15 F.3d 506 (5th Cir. 1994) ..........................................................14, 16

*Diamond v. Charles*,
    476 U.S. 54 (1986) ........................................................................................5

*Dillard v. Chilton County Commission*,
    495 F.3d 1324 (11th Cir. 2007) ................................................8, 11

*Doe v. Public Citizen*,
    749 F.3d 246 (4th Cir. 2014) .......................................................9, 17

*EEOC v. National Children's Center, Inc.*,
    146 F.3d 1042 (D.C. Cir. 1998) ..........................................................16

*Globe Newspaper Co. v. Superior Court for the County of Norfolk*,
    457 U.S. 596 (1982) ..................................................................................15

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ..........................................................................1, 7, 10

*Huff v. TeleCheck Services, Inc.*,
    923 F.3d 458 (6th Cir. 2019) ..............................................................12

*Kanuszewski v. Michigan Department of Health & Human Services*,
    927 F.3d 396 (6th Cir. 2019) ..............................................6, 11, 13

*Lance v. Coffman*,
    549 U.S. 437 (2007) ....................................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .........................................................6, 8, 11, 18

*McKay v. Federspiel*,
    823 F.3d 862 (6th Cir. 2016) ........................................................6, 10

*Meyer Goldberg, Inc. v. Fisher Foods, Inc.*,
    823 F.2d 159 (6th Cir. 1987) ....................................................16, 20

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020) .............................................................18

iii

**Page(s)**

*Newby v. Enron*,
    443 F.3d 416 (5th Cir. 2006) ....................................................................15, 18

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994) ..............................................................................17

*Public Citizen v. Liggett Group, Inc.*,
    858 F.2d 775 (1st Cir. 1988) ...........................................................................16

*Rudd Equipment Co. v. John Deere Construction & Forestry Co.*,
    834 F.3d 589 (6th Cir. 2016) ...........................................................................18

*Schlesinger v. Reservists Committee to Stop the War*,
    418 U.S. 208 (1974) .....................................................................................7, 9

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) ............................................................................................18

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,
    825 F.3d 299 (6th Cir. 2016) ...........................................................................18

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ........................................................................13

*South Dakota ex rel. Barnett v. United States Department of Interior*,
    317 F.3d 783 (8th Cir. 2003) ...........................................................................19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...........................................................................................7

*Springer v. Cleveland Clinic Employee Health Plan Total Care*,
    900 F.3d 284 (6th Cir. 2018) .............................................................................7

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ............................................................................................15

*Tennessee v. United States Department of State*,
    931 F.3d 499 (6th Cir. 2019) .............................................................................7

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................................................6, 12

*United States v. Cianfrani*,
    573 F.2d 835 (3d Cir. 1978) ............................................................................17

**Page(s)**

*Ward v. National Patient Account Services Solutions, Inc.*,
9 F.4th 357 (6th Cir. 2021) .......................................................................12, 13

*Warth v. Seldin*,
422 U.S. 490 (1975)..........................................................................................7

## RULES

Fed. R. Civ. P. 24(b) ...........................................................................................19

Fed. R. Civ. P. 24(b)(1)(B)..................................................................................20

Fed. R. Civ. P. 24(b)(3).......................................................................................19

Fed. R. Civ. P. 24(c)............................................................................................20

v

**Page(s)**

*Ward v. National Patient Account Services Solutions, Inc.*,
9 F.4th 357 (6th Cir. 2021) .......................................................................12, 13

*Warth v. Seldin*,
422 U.S. 490 (1975)..........................................................................................7

## RULES

Fed. R. Civ. P. 24(b) ...........................................................................................19

Fed. R. Civ. P. 24(b)(1)(B)..................................................................................20

Fed. R. Civ. P. 24(b)(3).......................................................................................19

Fed. R. Civ. P. 24(c)............................................................................................20

## INTRODUCTION

This Court directed CoreCivic to address whether Proposed Intervenor-Appellant Eddie Tardy has Article III standing to intervene on appeal to challenge the District Court's sealing of certain record documents. The answer is no. By his own account, Tardy wants to intervene only to assert a "public right" in open judicial proceedings. Mot. to Intervene 1, 2, 4-5 (Mot.). But the Supreme Court and this Circuit have held that vindicating public rights alone does not confer Article III standing. Instead, a litigant must possess a "'personal stake' . . . distinguishable from the general interest of every citizen." *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013). Because Tardy has never attempted to demonstrate a legally cognizable personal stake in the District Court's sealing orders, he lacks standing to intervene. This Court should deny Tardy's motion and let this case end.

## BACKGROUND

This securities class action began in August 2016. It was brought by Plaintiff Nikki Bollinger Grae on behalf of a class of investors who acquired CoreCivic stock from February 2012 to August 2016. Class Action Complaint, R. 1, Page ID # 1-39. Grae alleged that during this period CoreCivic violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by misrepresenting that it offered quality services and was cost effective compared to government-run facilities. *Id.* at Page ID # 2-3 (¶ 4). CoreCivic vigorously disputed those allegations.

In May 2021—after nearly five years of litigation, dozens of motions, and two interlocutory appeals to this Court—the original parties reached a settlement prior to trial. *See* Settlement Agreement, R. 463, Page ID # 24846-47.  In November 2021, the District Court approved the settlement and entered a final judgment and order of dismissal. *See* Final Judgment, R. 479, Page ID # 25424-30.  The settlement made clear that it did not constitute "an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever."  Settlement Agreement, R. 463, Page ID # 24847; *see* Final Judgment, R. 479, Page ID # 25427 (¶ 12).

Three months later, a separate plaintiff unconnected to this securities case, Marie Newby, brought a separate tort action in the Middle District of Tennessee against a CoreCivic subsidiary and various individual defendants based on events surrounding the 2021 death of her son in a CoreCivic facility. *See* Newby Mot. to Intervene and Unseal, R. 481, Page ID # 25454 (Ex. A, M.D. Tenn. Compl. ¶ 13). A week later—before any kind of meaningful discovery was performed in her own action—Newby moved to intervene in this case for the purpose of requesting to unseal "the parties' motions for class certification, for summary judgment, sealed portions of the parties' Daubert motions, responses, replies, and supporting documentation." *Id.* at Page ID # 25432.  She argued that these documents were "likely to hold information that is pertinent to or likely to aid her in" the pursuit of her own claims of deliberate indifference and underqualified staffing. *Id.* at Page ID

# 25437. She also argued that the public's "right of access . . . to judicial documents" favored unsealing the materials. *Id.* at Page ID # 25441.

The District Court granted Newby's motion in part and denied it in part. *See* Final Order, R. 494, Page ID # 26214. It first found that Newby's "litigation-related interests" were insufficient to support intervention, largely because the subject matter of the settled case was "far broader and involve[d] numerous topics irrelevant to her claims." *Id.* at Page ID # 26212. Turning to the "only potentially persuasive interest"—the "public interest" in the underlying records—the Court noted that it had already considered this interest when making its initial sealing determinations and Newby provided no good reason to question those earlier conclusions. *Id.* Nonetheless, because CoreCivic and the federal government did not object to partial unsealing, the Court granted intervention and instructed the clerk to unseal more than 100 documents, keeping 42 documents under seal. *Id.* at Page ID # 26213-14.

Newby appealed. She sought to unseal every document ever filed in this case—dozens of which were not mentioned in her intervention motion or the District Court's order. CoreCivic responded that many of Newby's arguments were waived and that, in any event, the District Court properly exercised its discretion when maintaining the seal. On August 17, 2022, Newby moved to dismiss her appeal after she settled her tort claims with CoreCivic. *See* ECF No. 30-1 at 1.

That same day, Eddie Tardy—represented by Newby's counsel—moved this

Court to intervene and "assume the status" of Newby on appeal.  Mot. 1.  Tardy made clear that his purpose in intervening was to vindicate the general public's "right of access to court filings," which he conceded "is a 'public' right that does not belong to any individual litigant."  *Id.*; *see also id.* at 2, 4-5 (reiterating "public right" theory).  Tardy also noted that he was "just beginning" the process of filing a tort suit against CoreCivic based on the September 2021 murder of his son by other inmates at a CoreCivic state facility, and asserted that his "transparency interest" in unsealing the documents goes "well beyond his status as a mere litigant."  *Id.* at 3.  Tardy said that his justification for intervention was "materially identical" to Newby's, and he agreed to adopt her briefing as his own.  *Id.* at 3, 4.

CoreCivic opposed Tardy's Article III standing to intervene, arguing that he lacked a sufficient personal stake in the appeal to satisfy the "injury in fact" requirement.  Opp. 2-4.  Tardy replied by reasserting his desire to vindicate public rights, stating that he—"like any other member of the public who is foreclosed from accessing the thousands of pages of improperly sealed judicial records in this case"—has standing to intervene to request that the documents be unsealed.  Mot. Reply 6.  Tardy reiterated that he planned to sue CoreCivic in connection with his son's death, though he submitted no evidence supporting this assertion or explaining the basis of the potential suit.  *Id.* at 5-6.  Tardy denounced CoreCivic's opposition as "flagrantly meritless," "baseless," "confused," and "unserious."  *Id.* at 3, 4, 5.

4

On September 2, 2022—more than two weeks after moving to intervene—Tardy filed his separate tort suit against CoreCivic. *See* ECF No. 37-2. On October 20, 2022, this Court requested supplemental briefing on "the significant Article III question this case raises." ECF No. 38-2.

## ARGUMENT

## I.     TARDY LACKS STANDING TO INTERVENE ON APPEAL

The District Court dismissed this securities class action pursuant to a settlement in November 2021, following more than five years of hard-fought litigation between the original parties. Intervenors' counsel waited more than three months after dismissal to seek intervention on behalf of Newby, and when she resolved her separate dispute with CoreCivic, he then filed this second motion to intervene on behalf of Tardy. Both intervention motions were untimely and improper. More fundamentally, though—and more importantly for present purposes—Tardy lacks Article III standing. His motion should be denied.

### A.     A Proposed Intervenor Must Prove That He Suffered A Concrete And Particularized Harm To Continue An Action On His Own

When a permissive intervenor would be the only party remaining in a case, he must establish his Article III standing to pursue his claims. *See Diamond v. Charles*, 476 U.S. 54, 68 (1986) ("[A]n intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III."); *see also Chapman v.*

*Tristar Prods., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) (a proposed intervenor bears the burden of establishing Article III standing if he wishes to bring an appeal).

To demonstrate standing, a party must show (1) an injury in fact, (2) a causal connection between the injury and the challenged conduct, and (3) that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Each element must be supported "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. This means that as a case progresses past the motion-to-dismiss stage, a petitioner can no longer rely on "mere allegations," but instead must set forth "by affidavit or other evidence[,] specific facts" supporting his standing. *McKay v. Federspiel*, 823 F.3d 862, 867-68 (6th Cir. 2016); *see also Club v. U.S. EPA*, 793 F.3d 656, 662 (6th Cir. 2015) (requiring petitioner to support standing with evidence when petitioning for direct review of final agency action).

The Supreme Court has clarified that an injury in fact must be "concrete, particularized, and actual or imminent" for a plaintiff to invoke federal jurisdiction under Article III. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *see also Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019). "[S]tanding to sue may not be predicated upon an interest . . . which is held in common by all members of the public, because of the necessarily abstract

nature of the injury all citizens share." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974); *see also Baird v. Norton*, 266 F.3d 408, 411 (6th Cir. 2001) (a "generalized grievance shared by all" cannot give "standing to sue"); *Lance v. Coffman*, 549 U.S. 437, 441-42 (2007) (per curiam) (plaintiffs lack standing without a "particularized stake"). A claimed injury which is "shared in substantially equal measure by all or a large class of citizens" does not alone justify the exercise of the court's jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Instead, a petitioner must have suffered an injury that affected him in "a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016); *see also Hollingsworth*, 570 U.S. at 707 (requiring a "'personal stake' . . . distinguishable from the general interest of every citizen"). The "critical question" is whether a petitioner has alleged "'such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'" *Tennessee v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019). This ensures that courts will not serve as a forum for vindicating mere public rights. *See, e.g.*, *Chapman*, 940 F.3d at 307; *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 291 (6th Cir. 2018) (Thapar, J., concurring) ("[T]o ensure that the plaintiff bringing a public-rights lawsuit presents a true case or controversy (i.e., that they are the appropriate party to file [a] public-rights lawsuit), the plaintiff must show that *he* has actually suffered a concrete and particularized harm.").

Crucially, Article III standing is measured from the moment intervention is sought. *See Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1339 (11th Cir. 2007) (per curiam); *Ctr. for Powell Crossing, LLC v. Ebersole*, 696 F. App'x 702, 705 (6th Cir. 2017); *see also Crawford v. U.S. Dep't of the Treasury*, 868 F.3d 438, 457 (6th Cir. 2017). As a result, any standing deficiency cannot be cured later. *See, e.g.*, *Lujan*, 504 U.S. at 569 n.4. "'A court may not permit an action to continue, even where the jurisdictional deficiencies have been subsequently cured, "if jurisdiction [was] lacking at the [start].""" *Cortlandt Street Recovery Corp. v. Hellas Telecomms., S.à.r.l*, 790 F.3d 411, 422-423 (2d Cir. 2015).

### B.    Tardy's Public-Right Theory Of Standing Does Not Establish An Injury In Fact

Tardy's intervention papers repeatedly make clear that his sole basis for intervening is to vindicate a "public right" in open access to judicial records. His initial motion emphasized this point in three different places. At the start, Tardy asserted that the "right of access to court filings is a 'public' right that does not belong to any individual litigant," so Tardy "occupies the same position as Intervenor-Appellant Marie Newby when it comes to vindicating that right." Mot. 1. Later, Tardy preempted a challenge to timeliness of his intervention (nine months after dismissal) by asserting that, "[i]mportantly, the common law of right of access to court filings is a 'public' right that does not belong to any individual litigant and cannot be waived as a result." *Id.* at 2. And at the end of his motion, he reiterated

that he sought to advocate "the same interests" as Newby and emphasized that "[t]he transparency interest in access to judicial records" is a " 'public' right that does not belong to Ms. Newby or anyone else," meaning that Tardy would be "an appropriate advocate to vindicate it." *Id.* at 4-5.

Tardy then doubled down on his public-right theory in his reply brief. Responding directly to CoreCivic's argument that he lacked the injury in fact required for Article III standing, Tardy stated that

> Mr. Tardy—*like any other member of the public who is foreclosed from accessing the thousands of pages of improperly sealed judicial records in this case*—has standing to intervene in it for the limited purpose of seeking to unseal the district court's docket, because he is personally prevented from accessing judicial records that the First Amendment and federal common law guarantee him a right to review.

Mot. Reply 6 (emphasis added); *see also id.* at 4 (quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014), for proposition that "the right of access is widely shared among the press and the general public alike, such that anyone who seeks and is denied access to judicial records sustains an [Article III] injury").

On its own, the violation of a public right is not itself enough to establish standing. *See, e.g.*, *Schlesinger*, 418 U.S. at 220; *Baird*, 266 F.3d at 411. As noted, it is well settled that an asserted interest shared generally with the public "will not do." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997); *supra* at 7. Yet Tardy's request to "assume [Newby's] status" is premised on the very idea that "all members of the public" shared his asserted injury. *Schlesinger*, 418 U.S. at 220.

Crucially, Tardy never attempted to allege an additional "personal stake," *Hollingsworth*, 570 U.S. at 707, and this Court cannot make assumptions regarding Tardy's individual need for the documents.  *See, e.g.*, *McKay*, 823 F.3d at 867-68.

This case, then, is straightforward: Tardy bore the burden of establishing an individualized injury, yet he utterly failed to do so.  He lacks Article III standing.

## C.    Tardy Cannot Establish An Injury In Fact Based On Any Purported Litigation Interest

Tardy's intervention motion—which did not directly address his Article III standing or an injury in fact—indicated that the sealed documents might be useful to a separate tort lawsuit he was contemplating filing in connection with his son's death in a CoreCivic facility.  Mot. 3.  But his reply brief—which *did* address standing—rejected any litigation-based interest in obtaining the documents. Specifically, Tardy noted that "civil litigation is barely even a material consideration here," and he appeared to endorse CoreCivic's statement that "'litigation-related interests are insufficient to support intervention.'"  Mot. Reply 5 (quoting Opp. 3).

Tardy has therefore now disclaimed any litigation-based interest in intervening.  It is too late for him to assert such an interest—for the first time—in his supplemental brief.  *See Airline Pros. Ass'n of the Int'l Brotherhood of Teamsters, Loc. Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 989 (6th Cir. 2003) (refusing to allow plaintiff to allege new injury at oral argument).

In any event, Tardy could not establish an injury in fact based on his potential

use of sealed documents in a subsequent lawsuit, for at least three reasons.

*First*, a permissive intervenor's standing is measured from the time intervention is sought. *See Lujan*, 504 U.S. at 570; *see also Dillard*, 495 F.3d at 1339. But Tardy moved to intervene on August 17, 2022, and at that point he had not filed the lawsuit at issue (nor even been appointed as the administrator of his son's estate). *See* Mot. 3; Mot. Reply Ex. 1. Any threatened harm from not being able to use these documents in a hypothetical lawsuit against CoreCivic, then, was speculative and premature at the time of intervention. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (Article III injury must be "certainly impending" and cannot be based on a "speculative chain of possibilities"); *see also Kanuszewski*, 927 F.3d at 410 (no injury in fact where plaintiffs feared that series of events would occur). And Tardy could not cure his lack of standing by *later* filing the lawsuit against CoreCivic in September 2022. *See Cortlandt Street Recovery Corp.*, 790 F.3d at 422-23; *Lujan*, 504 U.S. at 569 n.4; *see also* ECF No. 37-2.

*Second,* a non-party's desire to obtain documents about a defendant from an earlier lawsuit in order to use those documents in a different lawsuit against the same defendant is not a cognizable right capable of triggering an Article III injury in fact. The Supreme Court has recognized only a few categories of injuries in fact, including physical harm, monetary harm, and "cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts."

11

*TransUnion,* 141 S. Ct. at 2206; *see also Ward v. Nat'l Patient Account Servs. Sols., Inc.*, 9 F.4th 357, 362 (6th Cir. 2021) (applying this test).

Tardy does not contend that a litigation-related injury fits into any of these three buckets. And even if this Court were to consider for itself whether such a harm "traditionally . . . provide[d] a basis for a lawsuit in American courts," *TransUnion*, 141 S. Ct. at 2206, the answer still would be no. Circuit courts recognized a public right of access in the context of *ongoing* trials, grounding such right in the need to participate in judicial proceedings and serve as a check on the courts as they make their decisions. *See, e.g.*, *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178-79 (6th Cir. 1983). It does not automatically follow that such a right extends to pulling materials from cases that have already fully resolved, especially where the intervenor's stated goal is to seek information about the *defendant*—not to monitor any ongoing judicial process. *See, e.g.*, Mot. 3 (Tardy's interest is in "public transparency of *CoreCivic records*" (emphasis added)); Mot. Reply 5 (seeking records about *CoreCivic's* alleged "fraud and mismanagement of private prisons"); *see also Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1017 (11th Cir. 1992) (Edmondson, J., dissenting). CoreCivic is unaware of any case where this Court found standing when a plaintiff simply sought to uncover the details of a dispute settled between private parties, without alleging judicial wrongdoing. *Cf. Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 467 (6th Cir. 2019) (no standing where

deprivation of information did not concretely affect plaintiff's future conduct); *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (emotional harm not traditionally a basis for bringing a lawsuit).  In any event, Tardy—not CoreCivic—bears the burden of showing that a non-party historically could sue in these circumstances.  *See Chapman*, 940 F.3d at 304; *Ward*, 9 F.4th at 362 (no standing where plaintiff failed to identify historical analogue).  He has not done so.

*Finally,* even if violation of a litigation-related interest could qualify as an injury in fact—and even if standing was measured from after Tardy filed suit—the highly attenuated chain of possibilities that would actually lead to such an injury here would not satisfy the requirement that a threatened injury be "certainly impending."  *Clapper*, 568 U.S. at 409; *see also Kanuszewski*, 927 F.3d at 410. Because he is seeking to intervene on appeal, Tardy has an affirmative obligation to establish his Article III standing with *evidence*, not merely unsubstantiated allegations.  *See Club*, 793 F.3d at 662 (because petitioner did not ask court "merely to assess the sufficiency of its legal theory," but instead sought "a final judgment on the merits," it needed to identify "record evidence" or submit "'affidavits or other evidence' attached to its opening brief" to establish standing); *see also Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002) (where underlying case had proceeded past the motion-to-dismiss stage, petitioner needed to support claimed injury with actual evidence).  But Tardy has never alleged—let alone proved with evidence—

that his wrongful death claim likely depends on these sealed documents.

And it is hard to see how he could. Tardy's tort lawsuit focuses on a different time, a different place, and different legal issues than this one. His lawsuit concerns the 2021 death of his son in a state facility operated pursuant to a contract with Tennessee. By contrast, this securities action challenged alleged misstatements made between February 2012 and August 2016 concerning a handful of different federal facilities operated pursuant to contracts with the Federal Bureau of Prisons. Tardy has never meaningfully connected the dots between the two cases. On the existing record, there is no reason to believe that the sealed documents have any bearing on the death of Tardy's son, or on Tardy's tort action.

In any event, Tardy has access to the ordinary tools of discovery in his own case, and he is fully capable of obtaining relevant documents there. He can protect any legitimate interest he might have in the sealed documents by simply by filing a discovery request in his own litigation. *See Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994) (making this point). But Tardy has never claimed that he has sought, or been denied access to, any documents he is entitled to in those proceedings. Any alleged harm related to the success of his separate lawsuit is, again, simply too speculative to support intervention. *See Clapper*, 568 U.S. at 409.

### D.    Tardy's Counterarguments Lack Merit

Tardy's primary argument for Article III standing rests on the Supreme

Court's decision in *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596 (1982), which he says "settle[s] the issue" here. Mot. Reply 3. There, a newspaper moved to intervene in an ongoing rape trial after the trial court barred the press and the general public from attending its proceedings. The newspaper had a direct interest in reporting on the trial. The District Court denied its motion, but the Supreme Court disagreed. In holding that the First Amendment protects a right of access to criminal trials, the Court stated that "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion." *Globe Newspaper*, 457 U.S. at 609 n.25.

*Globe Newspaper* does not establish Tardy's Article III standing. For one thing, the case never addressed standing, probably because there was a live case or controversy when the newspaper moved to intervene and the defendant sought the same relief. *See, e.g.*, *Newby v. Enron*, 443 F.3d 416, 422 (5th Cir. 2006) ("[T]here is no Article III requirement that intervenors have standing in a *pending* case."). A decision that skips over standing offers no precedential guidance on that issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdictional ruling[s]" carry no weight.); *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) (same point). But even if it were precedential, CoreCivic agrees that a newspaper that timely seeks intervention to attend an ongoing trial in order to report on it may have a particularized interest and standing.

That is completely unlike the situation here, where Tardy lacks any personal stake in this settled case not shared by "any other member of the public."  Mot. Reply 6.

Tardy also urges the Court to follow a series of out-of-circuit decisions allowing non-parties to intervene in circumstances such as these.  *Id.* at 4-5.  But Tardy provides no reason to follow those cases, other than the mere fact that they exist.  He also conveniently ignores the Fifth Circuit's holding in *Deus* that a "desire to intervene to pursue the vacating of [a] protective order and/or the unsealing of [a] record is not a justiciable controversy or claim, absent some underlying right creating standing for the movants."   15 F.3d at 525; *see* ECF No. 38-2 at 1 (supplemental briefing order stating that *Deus* "hold[s] that intervenors do not have standing" to challenge sealing orders by district court).

Tardy's out-of-circuit cases are unpersuasive.   Some of them overlook standing altogether, skipping straight to Rule 24.  *See, e.g.*, *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1044-46 (D.C. Cir. 1998); *see also Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 164 (6th Cir. 1987).  The cases that do purport to address standing provide little or no analysis, often falling back on earlier decisions where standing was not addressed. *See, e.g.*, *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 787 (1st Cir. 1988) (citing First Circuit cases that did not address standing); *see also Brown*, 960 F.2d at 1016 (one conclusory sentence on standing). And to the extent some of the out-of-circuit cases could be read to authorize a suit

to vindicate a public right without an injury in fact, those cases, for reasons already discussed, conflict with Supreme Court and Sixth Circuit precedent.

In any event, most of Tardy's authorities are best read to require that the intervenor have some specialized, personal interest in obtaining the relevant documents. In *Doe*, for example, the petitioners were three public interest organizations that had a "direct stake" in unsealing documents because they sought to "advocate directly on the issues to which the underlying litigation and the sealed materials relate[d]." 749 F.3d at 253, 264-65. In *United States v. Cianfrani*, the press was barred from attending pretrial proceedings in the criminal trial of a prominent Philadelphia politician, about which they wanted to report. 573 F.2d 835, 845-48 (3d Cir. 1978). And in *Pansy v. Borough of Stroudsburg*, the newspaper suffered a "distinct and palpable injury" supporting intervention when a protective order inhibited its ability to receive documents under Pennsylvania's Right to Know Act. 23 F.3d 772, 776-77 (3d Cir. 1994).

Tardy does not allege (let alone prove) any sort of direct interest analogous to the direct stake identified in his cited cases. On the contrary, Tardy candidly admits that his case for standing rests entirely on his assertion of a public right—and that his standing to intervene is identical to "*any other member of the public who is foreclosed from accessing the thousands of pages of improperly sealed judicial records in this case*." Mot. Reply 6 (emphasis added). That generic, universally

applicable interest is plainly not enough to satisfy Article III. The Court thus need not flesh out exactly what interests would qualify as concrete and particularized in other cases involving stronger claims. *Cf. Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 925 n.1 (11th Cir. 2020) (declining to wrestle with similar question where case could be resolved on the basis of plaintiff's deficient pleadings).[1]

Finally, it bears noting that Tardy's approach is not only legally unsound, but also would interfere with the usual progression of a case. Sealing orders are a necessary component of civil litigation, allowing the discovery process to function efficiently and to protect certain sensitive or confidential information from disclosure. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). It would severely undermine the effectiveness of sealing orders if, after termination of an action, any member of the public could intervene to obtain access to materials covered by such orders simply by proclaiming public access to be important. Trial

---

[1]    Tardy also suggests that this Court must review the District Court's sealing decisions sua sponte, even if no litigant objected or had standing to intervene. Mot. Reply 6. That is incorrect. Article III only allows federal courts to resolve legal issues arising out of actual disputes between real parties with standing. *See Lujan*, 504 U.S. at 559-61. The two cases Tardy cites for his position—*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 307 (6th Cir. 2016), and *Rudd Equipment Co. v. John Deere Construction & Forestry Co.*, 834 F.3d 589, 595 (6th Cir. 2016)—simply describe a court's obligation to weigh the public interest when ruling on a sealing motion properly before it. In any event, both cases involved pending litigation where there was no need for an intervenor to establish standing independently, so neither case addressed Article III. *See Newby*, 443 F.3d at 422.

18

courts likely would face intensified confidentiality order litigation in any case potentially of interest to third parties, and would risk being inundated with frivolous and unwarranted requests for public access to sealed court records long after the case ends. To avoid opening the floodgates, it is essential to rigorously enforce the requirement that an intervenor seeking access to judicial records must—like any other plaintiff—suffer a concrete and particularized harm to invoke federal jurisdiction. Article III requires nothing less.

## II.    TARDY'S LACK OF STANDING UNDERSCORES WHY PERMISSIVE INTERVENTION SHOULD BE DENIED

This Court's decision on whether to grant permissive intervention under Rule 24(b) is "wholly discretionary." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003); *see* Fed. R. Civ. P. 24(b) (a court "may" permit intervention). Here, the complexities of the standing question—which was not litigated below, and which has given rise to an active circuit split—weigh strongly against Tardy's intervention motion. *See* Opp. 4.

Tardy's lack of standing piles on to other strong reasons for denying intervention. For one thing, Tardy's motion came far too late: It was filed nine months after the final judgment, and only after another intervenor—Newby—filed and then voluntarily dismissed her own appeal. Tardy's effort to prolong the case is deeply prejudicial to CoreCivic, which is now entitled to repose after five-plus years of litigating against two different sets of adversaries. *See* Fed. R. Civ. P. 24(b)(3)

(flagging "delay" and "prejudice" as grounds to deny intervention). This case is a poster child for why "intervention postjudgment—which necessarily disturbs the final adjudication of the parties' rights—should generally be disfavored." *Bond v. Utreras*, 585 F.3d 1061, 1071 (7th Cir. 2009).

Intervention is especially inappropriate because Tardy can fully protect any legitimate interest he may have by seeking discovery in his own separate case.[2] Moreover, as Tardy himself acknowledged in his motion, there is a strong textual argument that permissive intervention is *never* proper under Rule 24 when the putative intervenor (1) lacks any "claim or defense that shares with the main action a common question of law or fact," as required by Rule 24(b)(1)(B); and (2) has not filed a "pleading that sets out the claim or defense for which intervention is sought," as required by Rule 24(c). *See* Mot. 4 n.1. Tardy's right to intervene thus flouts not only Article III, but also the express standing requirements of Rule 24. All these considerations confirm that intervention here is improper.

## CONCLUSION

For the foregoing reasons, the Court should deny Tardy's motion to intervene.

---

[2] *See, e.g.*, *Bradley v. Milliken*, 828 F.2d 1186, 1194 (6th Cir. 1987) (weighing fact that proposed intervenors' alleged interests were protected by other means); *Meyer Goldberg*, 823 F.2d at 162 (recognizing that petitioner would need to explain delay in seeking discovery in its own case before being allowed to intervene).

Dated:  November 3, 2022

Brian T. Glennon
Eric C. Pettis
Michael A. Galdes
LATHAM & WATKINS LLP
355 S. Grand Ave.
Suite 100
Los Angeles, CA  90071
(213) 485-1234

Steven A. Riley
Milton S. McGee, III
RILEY & JACOBSON, PLC
1906 West End Ave.
Nashville, TN  37203
(615) 320-3700

Respectfully submitted,

*/s/ Roman Martinez*
Roman Martinez
Christina Gay*
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2207

*\* Not admitted to practice in Washington, DC.  Admitted in Illinois.  All work supervised by a member of the DC Bar.*

*Counsel for Defendant-Appellee CoreCivic, Inc.*
*f/k/a Corrections Corporation of America*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with the type-volume limitations in Federal Rule of Appellate Procedure 32(a)(7)(B).  Pursuant to the Court's October 20, 2022 Order, the foregoing does not exceed twenty (20) pages, excluding the exempted parts under Federal Rule of Appellate Procedure 32(f).  The brief has been prepared in a proportionally spaced typeface using Times New Roman in 14 point size.

November 3, 2022                                    */s/ Roman Martinez*
                                                        Roman Martinez

## CERTIFICATE OF SERVICE

I, Roman Martinez, hereby certify that on November 3, 2022, I caused the foregoing document to be served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

*/s/ Roman Martinez*
Roman Martinez

**ADDENDUM:  DESIGNATION OF RELEVANT DISTRICT COURT**

**DOCUMENTS PURSUANT TO 6TH CIR. R. 30(B)**

| RECORD ENTRY NUMBER | DESCRIPTION OF ITEM | FILING DATE | PAGE ID # |
|---|---|---|---|
| 1 | Complaint | August 23, 2016 | 1-39 |
| 463 | Settlement Agreement | June 24, 2021 | 2844-85 |
| 479 | Final Judgment | November 8, 2021 | 25424-30 |
| 481 | Motion to Intervene and  Unseal, with exhibits | February 18, 2022 | 25432-6010 |
| 494 | Final Order | April 8, 2022 | 26209-14 |