Case No. 22-5312

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

NIKKI BOLLINGER GRAE, et al.,

*Plaintiffs*,

v.

CORRECTIONS CORPORATION OF AMERICA,
n.k.a. CoreCivic, *et al.*,

*Defendants-Appellees*,

MARIE NEWBY,

*Intervenor-Appellant*,

EDDIE TARDY,

*Proposed Intervenor*.

---

Appeal from the United States District Court for the
Middle District of Tennessee
Case No: 3:16-cv-2267

---

## PETITION FOR REHEARING OR REHEARING EN BANC

---

DANIEL A. HORWITZ (TN #032176)
LINDSAY SMITH (TN #035937)
MELISSA K. DIX (TN #038535)
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
(615) 739-2888
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law

Date: January 20, 2023                    *Counsel for Eddie Tardy*

# I.  TABLE OF CONTENTS

I. TABLE OF CONTENTS _____ ii

II. TABLE OF AUTHORITIES _____ iii

III. STATEMENT IN SUPPORT OF PETITION FOR REHEARING EN BANC_____ 1

IV. FACTS AND PROCEEDINGS _____ 6

V. ARGUMENT FOR REHEARING EN BANC _____ 10

VI. CONCLUSION AND RELIEF REQUESTED _____ 17

CERTIFICATE OF COMPLIANCE_____ 19

CERTIFICATE OF SERVICE _____ 20

## II.  TABLE OF AUTHORITIES

### Cases

*Binh Hoa Le v. Exeter Fin. Corp.*,
  990 F.3d 410 (5th Cir. 2021) _____ 14–15

*Brown v. Advantage Eng'g, Inc.*,
  960 F.2d 1013 (11th Cir. 1992) _____ 3

*Brown & Williamson Tobacco Corp. v. F.T.C.*,
  710 F.2d 1165 (6th Cir. 1983) _____ 2, 15

*CBS Inc. v. Young*,
  522 F.2d 234 (6th Cir. 1975) _____ 13–14

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) _____ 16

*Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014) _____ 3

*Federal Election Commission v. Akins*,
  524 U.S. 11 (1998) _____ 1, 10

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*,
  457 U.S. 596, 609 (1982) _____ 13

*Goodman v. Fuller*,
  960 F.2d 149 (6th Cir. 1992) _____ 2–3

*Grae v. Corr. Corp. of Am.*,
  No. 22-5312, 2023 WL 179767
  (6th Cir. Jan. 13, 2023) _____ *passim*

*Horne v. Flores*,
  557 U.S. 433 (2009) _____ 15–16

*Huff v. TeleCheck Servs., Inc.*,
  923 F.3d 458 (6th Cir. 2019) _____ 12–13

*In re Black Diamond Mining Co., LLC,*
    No. 15-96-ART, 2016 WL 4433356
    (E.D. Ky. Aug. 18, 2016)_____3

*In re Grand Jury Subpoena to Amazon.com Dated Aug. 7, 2006,*
    246 F.R.D. 570 (W.D. Wis. 2007) _____4–5

*In re Knoxville News Sentinel Co.,*
    723 F.2d 470 (6th Cir.1983) _____2–3

*Ipsen Biopharmaceuticals, Inc. v. Becerra,*
    2021 WL 4399531 (D.D.C. Sept. 24, 2021)_____4, 11–12

*Kleindienst v. Mandel,*
    408 U.S. 753 (1972) _____2

*Lugosch v. Pyramid Co. of Onondaga,*
    435 F.3d 110 (2d Cir. 2006) _____4

*Meyer Goldberg, Inc. of Lorain v. Fisher Foods,*
    823 F.2d 159 (6th Cir.1987) _____2–3

*Pansy v. Borough of Stroudsburg,*
    23 F.3d 772 (3d Cir. 1994) _____3–4

*Parsons v. U.S. Dep't of Just.,*
    801 F.3d 701 (6th Cir. 2015) _____15–16

*Pub. Citizen v. U.S. Dep't of Just.,*
    491 U.S. 440 (1989) _____1, 10

*Pub. Citizen v. Liggett Grp., Inc.,*
    858 F.2d 775 (1st Cir. 1988) _____3–4, 13

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980) _____2, 12

*Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.,*
    834 F.3d 589 (6th Cir. 2016)_____12, 16

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michiga*n,
    825 F.3d 299 (6th Cir. 2016) _____12

*Smith v. United States,*
    431 U.S. 291 (1977)_____2, 14

*Stanley v. Georgia,*
    394 U.S. 557, 564 (1969) _____1–2, 12

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 972 (2020) _____11

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) _____*passim*

*United States v. Amodeo,*
    71 F.3d 1044 (2d Cir. 1995)_____4–5

*Van Cleve v. U.S. Sec'y of Com.,*
    2022 WL 1640669 (11th Cir. May 24, 2022) _____11–12

## **Additional Authorities**

Fed. R. App. P. 35_____5

## III.  STATEMENT IN SUPPORT OF PETITION FOR REHEARING EN BANC

Transparency in court proceedings promotes confidence in the judicial system and the fair administration of justice.  It also encourages judges to act impartially and consistently.  Yet the 2-1 published panel decision here impairs the judiciary's promise of transparency by holding that members of the public cannot seek to unseal improperly sealed documents unless they demonstrate "adverse effects."  *Grae v. Corr. Corp. of Am.*, No. 22-5312, 2023 WL 179767 at *4 (6th Cir. Jan. 13, 2023).  As Judge Gibbons observed in dissent, that ruling "fails to heed the Supreme Court's decisions in *Public Citizen v. United States Department of Justice*, 491 U.S. 440[] (1989), and *Federal Election Commission v. Akins*, 524 U.S. 11[] (1998)," and it "reaches a result that puts [this Court] at odds with [its] sister circuits[.]"  *Id.* at *4.

In reaching this holding, the panel relied on "adverse effects" language in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).  But *TransUnion* was a damages case, and the opinion made clear that its holding did not apply to situations where the public's right to information was at stake.  *Id.* at 2214 (distinguishing *Akins* and *Public Citizen* because "those cases involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information.").  *TransUnion* further explained that, for standing purposes, "traditional harms may also

include harms specified by the Constitution itself," *see id.* at 2204—an observation that controls here, given that the right to receive information is a constitutional right. *E.g., Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information"); *Smith v. United States*, 431 U.S. 291, 319, n.18 (1977) ("the First Amendment necessarily protects the right to 'receive information and ideas.'") (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 762–763 (1972)). *Accord Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576–77 (1980) ("'In a variety of contexts this Court has referred to a First Amendment right to 'receive information and ideas.' What this means in the context of trials is that the First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors.") (quoting *Kleindienst*, 408 U.S. at 762).

The panel's holding also inadvertently transforms this Court's sealing precedent. That precedent used to afford members of the public an essential "check on courts," which guards against secrecy that "insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1178–79 (6th Cir. 1983). This Court once regarded that check as "a presumptive right[.]" *Goodman v. Fuller*, 960 F.2d 149 (6th Cir. 1992)

("Generally speaking, members of the public have a presumptive right to inspect and copy judicial records.") (citing *Meyer Goldberg, Inc. of Lorain v. Fisher Foods*, 823 F.2d 159, 163 (6th Cir.1987); *In re Knoxville News Sentinel Co.*, 723 F.2d 470, 473–74 (6th Cir.1983)).  As a result, before the panel's opinion, District Court judges within this Circuit—including the panel majority's own author—understood this Court's precedent as holding that, "[s]hould a member of the public want to read [] sealed documents, the parties would have the burden of showing why he should not," and "[t]o break this seal,  . . . all [someone] needed to do was ask."  *In re Black Diamond Mining Co., LLC*, No. 15-96-ART, 2016 WL 4433356, at *1–2 (E.D. Ky. Aug. 18, 2016) (Thapar, J.) (citing *Meyer Goldberg, Inc., of Lorain*, 823 F.2d at 161).

Other Circuits embrace this view.  *See, e.g., Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) ("[T]he right of access is widely shared among the press and the general public alike, such that anyone who seeks and is denied access to judicial records sustains an injury."); *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("because it is the rights of the public, an absent third party, that are at stake, any member of the public has standing . . . to move the court to unseal the court file in the event the record has been improperly sealed.").  *Cf. Pub. Citizen v. Liggett Grp., Inc.*,

-3-

858 F.2d 775, 787 (1st Cir. 1988) (holding that intervenors have standing to seek modification of discovery-related protective orders); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) (same).  But this Circuit now does not, based on a single sentence from the same *TransUnion* opinion that specifically excepted public-disclosure claims from its scope, *cf. Ipsen Biopharmaceuticals, Inc. v. Becerra*, 2021 WL 4399531, at *10 n.4 (D.D.C. Sept. 24, 2021) ("*TransUnion* suggested that the violation of 'public-disclosure or sunshine laws that entitle all members of the public to certain information' is necessarily a justiciable injury.").

By requiring unsealing proponents to demonstrate "adverse effects from the denial of documents," *see Grae*, 2023 WL 179767 at *1, the panel's ruling will have catastrophic effects on all manner of informational and public-disclosure claims—from sealing, to FOIA, to courtroom closure, to gag orders.  At best, the panel's decision will require citizens to disclose to a judge—one whose rulings they may be investigating for impropriety—their motivation to seek records held by their government in an effort to satisfy the panel's heightened injury standard.  *Contra Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006) ("what the Newspapers seek to do with the documents has no effect on our consideration"); *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("we believe motive generally to

be irrelevant to defining the weight accorded the presumption of access."); *In re Grand Jury Subpoena to Amazon.com Dated Aug. 7, 2006*, 246 F.R.D. 570, 576 (W.D. Wis. 2007) ("Rule 6(e)(6) does not require Amazon to provide any justification for seeking to unseal the relevant orders, let alone a justification that satisfies the government.").  At worst, it will stymie such claims entirely, because without speculating, litigants cannot plausibly know how they were injured by being denied access to information that they have a right to receive but cannot see.  *Grae*, 2023 WL 179767 at *7 ("How can a member of the public, unfamiliar with the contents of a sealed judicial record, establish how the failure to disclose that record harms him?  Such an exercise will inherently require the kind of 'speculation' that does not satisfy Article III.") (Gibbons, J., dissenting).

        In sum, the panel majority's decision—appended as **Attach. 1**—conflicts with multiple decisions of the Supreme Court, *see* Fed. R. App. P. 35(b)(1)(A); it conflicts with multiple decisions of this Court and its sister circuits, *id*.; and it involves a question of exceptional importance: Whether members of the public must suffer "adverse effects" before they can seek access to information that the law requires their government to give them. *See* Fed. R. App. P. 35(b)(1)(B).  Rehearing or rehearing en banc should be granted.

## IV.  FACTS AND PROCEEDINGS

This case involves a private prison contractor—CoreCivic—that performed poorly enough that the federal government took remedial action to address the company's deficient safety and security record.[1]  During the underlying securities fraud litigation, the District Court entered a series of uniformly unreasoned two-word (sometimes four-word) sealing orders that adopted whatever position sealing proponents advocated, merely scribbling "Motion GRANTED" in the corner of a proponent's motion without further analysis.[2]  As a result, thousands of pages of records regarding matters of extraordinary public concern were sealed wholesale, without any accompanying findings or reasoning.

Shortly after the original litigation settled, Marie Newby moved to intervene for the limited purpose of unsealing the illicitly sealed documents

---

[1] Mem. Op., R. 165, PageID#4413 (citing Ex. D Yates Mem., R. 149-4).

[2] Order, July 20, 2018, **R. 106**, PageID#2830; Order, Oct. 29, 2018, **R. 123**, PageID#3483; Order, Nov. 5, 2018, **R. 128**, PageID#3511; Order, Jan. 2, 2019, **R. 142**, PageID#3652; Order, Feb. 8, 2019, **R. 156**, PageID#4219; Order, Feb. 22, 2019, **R. 164**, PageID#4411; Order, Nov. 23, 2020, **R. 368**, PageID#17661; Order, Nov. 23, 2020 **R. 369**, PageID#17662; Order, Nov. 23, 2020, **R. 371**, PageID#17666; Order, Nov. 23, 2020, **R. 372**, PageID#17667; Order, Dec. 7, 2020, **R. 377**, PageID#17756; Order, Dec. 7, 2020, **R. 378**, PageID#17757; Order., Dec. 7, 2020, **R. 379**, PageID#17758; Order, Feb. 17, 2021, **R. 414**, PageID#23860; Order, Feb. 17, 2020, **R. 415**, PageID#23861; Order, Feb. 22, 2021, **R. 432**, PageID#24390; Order, Feb. 22, 2021, **R. 433**, PageID#24391.

in the District Court record.[3]   Again deferring to what proponents of sealing—who confessed substantial error at this point[4]—wanted, the District Court unsealed some, but not all, of the improperly sealed documents.[5]  Ms. Newby appealed.  Before her appeal could be adjudicated, though, CoreCivic settled with her, and she moved to dismiss her appeal.

The same day, Eddie Tardy—a member of the public who, like Ms. Newby, saw his child murdered in CoreCivic's care—moved to intervene and assume Ms. Newby's role.  He had good reason, too.  In particular, he was preparing to (and then did) file a lawsuit in the same district that had just illicitly sealed thousands of record pages for CoreCivic's benefit.  Thus, as a "member of the public who is foreclosed from accessing the thousands of pages of improperly sealed judicial records in this case" and who wished to access the "trove of improperly sealed documents in the district court" record,[6] Mr. Tardy sought access to them.

In response to questioning about his standing to seek document unsealing, Mr. Tardy's counsel acknowledged that Mr. Tardy had not alleged

---

[3] Mot. to Intervene and Unseal Judicial Docs., R. 481, PageID##25432–46.
[4] Defs.' Partial Opp'n to Mot. to Intervene and Unseal, R. 492, PageID##26057–58; *id.* at PageID#26058–59; *id.* at PageID#26059; *id.* at PageID#26060; *id.* at PageID#26063.
[5] Final Order, R. 494, PageID#26214.
[6] Reply to Appellees' Opp'n to Mot. of Eddie Tardy, ECF No. 36-1

any "adverse consequences in terms of damages," though he explained that,

unlike *TransUnion*, the present dispute is not about money damages.[7]  He

also maintained that asking whether he had suffered adverse consequences

was not the proper inquiry for sealing claims, explaining that he wished to

exercise his right "to check the district court's rulings" instead.  Specifically,

Mr. Tardy's counsel told the Panel:

> The reason I wanted to emphasize *TransUnion*'s involvement with money damages is because the issues and the injury in a constitutional sense [are] fundamentally different when you're talking about access to judicial records.  As this Court held in *Brown v. Williamson Tobacco Corporation,* sealing 'insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption.'  In other words, this gives the members of the public, individually, an opportunity to make sure that the judiciary is doing its job.  That may not result in a monetary injury if they can't do so, but it's certainly an injury in the constitutional sense.  And that injury matters here.  Here's why:
>
> In a footnote of document 165, the district court explained that it had, quote, 'so far honored the parties' confidentiality claims.'  Now that itself is an error.  As this Court has explained, district courts are supposed to closely scrutinize confidentiality claims rather than deferentially honoring them. . . .  [O]n the one

---

[7] Oral Argument at 1:53, 6:50,  *Grae v. Corr. Corp. of Am.*, 2023 WL 179767 (6th Cir. Jan. 13, 2023) (No. 22-5312), https://www.opn.ca6.uscourts.gov/internet/court_audio/aud2.php?link=audio/11-15-2022%20-%20Tuesday/22-5312%20Nikki%20Grae%20et%20al%20v%20Corrections%20Corp%20of%20America%20et%20al.mp3&name=22-5312%20Nikki%20Grae%20et%20al%20v%20Corrections%20Corp%20of%20America%20et%20al.  *See also* Citation of Suppl. Authorities, ECF No. 51-1.

occasion that the district court appears to have engaged in any kind of meaningful scrutiny of CoreCivic's sealing claims, it found that their asserted justifications for sealing were imaginary. Even so, those documents, which the district court quoted at length and characterized, still remain sealed despite a specific determination that they do not actually contain any confidential information or trade secrets.

. . . .

The public should be able to check the district court's rulings here. And by denying access to sealed records, it cannot.[8]

The panel majority held that "*TransUnion* specifically framed the adverse-effects rule as part of the constitutional inquiry that applies across all cases," and it ruled that because "Tardy told us he had not suffered any adverse effects" within the meaning of *TransUnion*, he lacked standing. *Grae*, 2023 WL 179767, at *3. Judge Gibbons dissented. *Id.* at *5 ("Rather than assume that the Supreme Court silently overruled *Public Citizen* without instruction to do so, I would adopt the reading of *TransUnion* that avoids conflict with the Supreme Court's longstanding precedent: *Public Citizen* and *Akins* govern when plaintiffs seek information pursuant to a public right of access, while *TransUnion* governs certain other theories of informational injury."). So this Circuit has now become "the only one to hold that intervenors categorically lack standing to vindicate the public right of access to information[,]" even though "all agree that the public right of access

---

[8] *Id.*

to judicial records is deeply rooted in Anglo-American history and tradition[.]" *Id.* at *6 (Gibbons, J., dissenting).

### V.  ARGUMENT FOR REHEARING EN BANC

"All agree" that Eddie Tardy "sought" and was "denied" specific judicial records.  *See id.* at *4 (quoting *Public Citizen*, 491 U.S. at 449).  That is enough to confer standing to contest a denial.  Indeed, in two indistinguishable contexts, the Supreme Court has rejected the same "adverse effects" rule that the panel applied here.  *See Public Citizen*, 491 U.S. at 449 ("Our decisions interpreting the Freedom of Information Act *have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records. . . .* There is no reason for a different rule here.") (emphasis added, collecting cases); *Akins*, 524 U.S. at 21 ("*The 'injury in fact' that respondents have suffered consists of their inability to obtain information . . .* that, on respondents' view of the law, the statute requires that AIPAC make public.") (emphasis added).

*TransUnion* did not purport to alter this rule in the context of public-disclosure claims.  Three aspects of *TransUnion* make that clear.

<u>*First*</u>, the question presented in *TransUnion* was limited to "[w]hether either Article III or Rule 23 permits *a damages* class action where the vast majority of the class suffered no actual injury, let alone an injury anything

like what the class representative suffered." *See* Citation of Suppl. Authorities, ECF No. 51-1 (emphasis added); *TransUnion LLC v. Ramirez*, 141 S. Ct. 972 (2020) ("Petition for writ of certiorari . . . granted limited to Question 1"). Thus, *TransUnion* addressed litigants' standing to maintain claims *for money damages*—which public-disclosure claims are not.

*Second*, *TransUnion* emphasized that the Supreme Court's decades-old public-disclosure cases, *Akins* and *Public Citizen*, did not control the claim for money damages presented in *TransUnion* because *TransUnion* did not involve denial of information under "a public-disclosure law." As the Court explained it:

> The [*TransUnion*] plaintiffs did not allege that they failed to receive any required information. . . . Therefore, *Akins* and *Public Citizen* do not control here. In addition, those cases involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information. This case does not involve such a public-disclosure law.

*TransUnion LLC*, 141 S. Ct. at 2214. Courts in other circuits have correctly interpreted this passage as holding "that the violation of 'public-disclosure or sunshine laws that entitle all members of the public to certain information' is necessarily a justiciable injury." *Ipsen Biopharmaceuticals, Inc.*, 2021 WL 4399531, at *10 n.4. *Cf. Van Cleve v. U.S. Sec'y of Com.*, 2022 WL 1640669, at *4 (11th Cir. May 24, 2022) (plaintiff lacked standing because no "public-

disclosure law" was at issue).

*Third*, *TransUnion* explained that "traditional harms [establishing standing] may also include harms specified by the Constitution itself."  141 S. Ct. at 2204.  Denial of a constitutional right to receive information is such a harm.  *See, e.g., Stanley*, 394 U.S. at 564 ("It is now well established that the Constitution protects the right to receive information"); *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 595 (6th Cir. 2016) (unsealing claims involve a "First Amendment" right of access).  A court's wrongful denial of the public's right to access information in judicial proceedings is also a constitutional injury—in the literal sense that it is an injury arising from a violation of the Constitution—"standing alone."  *See Richmond Newspapers, Inc.*, 448 U.S. at 576.

The panel's application of *TransUnion* to sealing claims does not square with the justification for a robust particularized injury requirement, either.  Remedying improper sealing is an "independent" judicial "obligation[,]" *see Shane Grp., Inc. v. Blue Cross Blue Shield of Michiga*n, 825 F.3d 299, 306 (6th Cir. 2016), so there is no danger of Congress "defining harmless procedural violations—or for that matter anything at all—as injuries in fact" in this context.  *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 466 (6th Cir. 2019).  Thus, there is no circumstance in which adjudicating an

unsealing claim could interfere with the Constitution's separation of powers, both because Congress did not legislate the right and because "[a] court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody." *Id.* at 307.

By requiring unsealing proponents to demonstrate "adverse effects from the denial of documents" of the sort required to maintain claims for money damages, *Grae*, 2023 WL 179767 at *1, the panel has inadvertently impaired all public-disclosure claims in this Circuit. Thus, absent adverse effects—which will nearly always be speculative, given that litigants cannot see the information they have been denied—unlawful FOIA denials will no longer present justiciable controversies. *Contra Pub. Citizen.*, 491 U.S. at 449 ("Our decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records.") (collecting cases). Nor would claims concerning illicit courtroom closure be justiciable. *Contra Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 609, n.25 (1982) ("representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'") (cleaned up). Non-parties could not contest gag orders, either, given that they would necessarily have to speculate about what a gagged litigant might

"potential[ly]" say.  *Contra CBS Inc. v. Young*, 522 F.2d 234, 237–38 (6th Cir. 1975) ("the order of May 6, in denying to petitioner access to potential sources of information, at least arguably impairs rights guaranteed to the petitioner by the First Amendment.").

As for sealing claims, the panel would allow litigants like CoreCivic to circumvent review, disable a claim of injury, and ensure that illicit sealing could *never* be remedied by merely offering to provide sealed records under a protective order.  That is not a far-fetched or fanciful concern, either.  Instead, it is gamesmanship that CoreCivic attempted *in this case*.[9]

Indeed, the ramifications of the panel decision here may reach even further than that.  For example, if the government opted to ban controversial books, then prospective readers who merely desired to read them—but who could not otherwise demonstrate "adverse effects," such as "[p]hysical and pocketbook injuries," from being denied that right—would lack standing to contest the ban.  *See Grae*, 2023 WL 179767 at *1.  The Constitution does not handcuff the right to receive information in this way, though.  To the contrary, it guarantees it.  *See Smith*, 431 U.S. at 319, n.18.

Most concerning, imposing a heightened injury standard for access to judicial records risks the integrity of the judiciary itself.  As the Fifth Circuit

---

[9] Defs.' Partial Opp'n to Mot. to Intervene, R. 492, PageID##26058–64.

has observed, "the judiciary's institutional legitimacy depends on public trust[,]" and "[p]ublic trust cannot coexist with a system wherein important judicial decisions are made behind closed doors and, worse, private litigants do the closing." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021) (cleaned up).

The panel's decision violates that trust. It also does so in contravention of Supreme Court guidance and in a manner that "makes this circuit the only one to hold that intervenors categorically lack standing to vindicate the public right of access to information." *Grae*, 2023 WL 179767 at *6 (Gibbons, J., dissenting). Under this new standard, most citizens will now be unable to seek document unsealing in most cases for want of demonstrated harm, thereby denying them their right to "analyze and critique" judicial decisions. *See Brown & Williamson Tobacco Corp.*, 710 F.2d at 1178. That result will badly damage trust in an institution that cannot afford to lose it.

Nor does a heightened, damages-based intervenor standing requirement even make sense in the unsealing context—at least not where the standing of the original parties is uncontested. "[A]s in all standing inquiries, the critical question is whether at least one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'" *Horne v. Flores*, 557 U.S. 433, 445

(2009) (cleaned up).  *Accord Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015) ("only one plaintiff needs to have standing in order for the suit to move forward.").  Here, an entire class of plaintiffs and every defendant—all of whom had standing to express a sealing position and did so, including through this appeal—independently satisfied that requirement. At the same time, this Court has held that: (1) unsealing claims are non-waivable because they involve "'the *public's* First Amendment and common law right of access to court filings'"; (2) courts have an "independent" obligation to consider the rights of the public; and (3) unsealing claims are not conditioned on an objection from anyone and may be considered on a court's own motion.  *See Rudd Equip. Co., Inc.*, 834 F.3d at 595 (cleaned up). Pairing that framework with the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), it cannot be that improper sealing orders can evade scrutiny because intervenors cannot identify specific consequences arising from being denied access to hidden records they cannot see.  Thus, en banc rehearing is warranted.

One final point. As noted, the panel majority hung its hat on Mr. Tardy's modest concession at argument that he had not alleged any "adverse

consequences in terms of damages."[10]  That statement did not mean Mr. Tardy suffered *no* adverse consequences.  He has suffered the adverse consequence of not being able to determine whether the district court's orders were proper.  He has suffered the adverse consequence of not knowing whether the judicial inquiry was compromised to benefit CoreCivic.  And he has suffered the adverse consequence of not knowing whether the sealed documents may shed light on CoreCivic's culpability for his son's death or help him advocate for reform.  This Court should take Mr. Tardy "at his word."  *Grae*, 2023 WL 179767 at *3.  But it should not take Mr. Tardy's word and use it as a concession regarding adverse effects he was not even addressing.  The colloquy on which the Court relied was a damages-based discussion regarding *TransUnion*'s application to this case.  To the extent that the panel majority mistakenly construed that discussion as disclaiming any adverse effects whatsoever, rehearing is appropriate.

## VI.  CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Mr. Tardy's petition for rehearing or rehearing en banc should be granted.

---

[10] *See supra* note 7 at 6:50.

Respectfully submitted,

By:    /s/ Daniel A. Horwitz
       DANIEL A. HORWITZ, BPR #032176
       LINDSAY SMITH, BPR #035937
       MELISSA K. DIX, BPR #038535
       HORWITZ LAW, PLLC
       4016 WESTLAWN DR.
       NASHVILLE, TN 37209
       daniel@horwitz.law
       lindsay@horwitz.law
       melissa@horwitz.law
       (615) 739-2888

       *Counsel for Eddie Tardy*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This petition for rehearing en banc complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(b), because excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 3,893 words, as calculated by Microsoft Word.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Georgia font.

By:    /s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 20, 2023, service of the foregoing document was made upon the following Filing Users through the Court's Electronic Filing System:

Michael Goldberg
GOLDBERG LAW, PC
1999 Avenue of the Starts, Suite 1100
Los Angeles, CA 90067
Email: michael@goldberglawpc.com

Jeremy A. Lieberman
J. Alexander Hood, II
Marc C. Gorrie
POMERANTZ, LLP
600 Third Ave., 20th Floor
New York, NY 10016
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: mgorrie@pomlaw.com

Paul Kent Bramlett
Robert P. Bramlett
BRAMLETT LAW OFFICES
40 Burton Hills Blvd., Suite 200
P. O. Box 150734
Nashville, TN 37215
Email: pknashlaw@aol.com
Email: robert@bramlettlawoffices.com

Christopher T. Cain
SCOTT & CAIN
550 W Main Avenue, Suite 601
Knoxville, TN 37902
Email: cain@scottandcain.com

Christopher Hamp Lyons
Christopher M. Wood
ROBBINS GELLER RUDMAN &

DOWD, LLP
414 Union Street, Suite 900
Nashville, TN 37219
Email: clyons@rgrdlaw.com
Email: cwood@rgrdlaw.com

Jerry E. Martin
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Email: jmartin@barrettjohnston.com

Dennis J. Herman
Willow E. Radcliffe
Kenneth J. Black
ROBBINS GELLER RUDMAN &
DOWD, LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Email: dherman@rgrdlaw.com
Email: willowr@rgrdlaw.com
Email: kennyb@rgrdlaw.com

Brian T. Glennon
David J. Schindler
Faraz Mohammadi
Meryn C.N. Grant
LATHAM & WATKINS, LLP (LA Office)
355 S. Grand Avenue, Suite 100
Los Angeles, CA 90071
Email: brian.glennon@lw.com
Email: david.schindler@lw.com
Email: faraz.mohammadi@lw.com
Email: Meryn.Grant@lw.com

Morgan E. Whitworth
LATHAM & WATKINS
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Email: morgan.whitworth@lw.com

Elizabeth O. Gonser
Milton S. McGee, III
Steven Allen Riley
RILEY, WARNOCK & JACOBSON
1906 West End Avenue
Nashville, TN 37203
Email: tmcgee@rwjplc.com
Email: sriley@rwjplc.com
Email: egonser@rwjplc.com

James A. Holifield, Jr.
HOLIFIELD, JANICH, RACHAL, & ASSOCIATES, PLLC
11907 Kingston Pike, Suite 201
Knoxville, TN 37934
Email: aholifield@holifieldlaw.com

Sarah A. Tomkowiak
LATHAM & WATKINS LLP (DC Office)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Email: sarah.tomkowiak@lw.com

Patrick V. Dahlstrom
POMERANTZ, LLP
10 South La Salle St., Suite 3505
Chicago, IL 60603
Email: pdahlstrom@pomlaw.com

Ellen Gusikoff Stewart
Jason A. Forge
Natalie F. Lakosil
Rachel L. Jensen
ROBBINS GELLER RUDMAN &
DOWD, LLP (San Diego)
655 W Broadway, Suite 1900
San Diego, CA 92101
Email: elleng@rgrdlaw.com
Email: jforge@rgrdlaw.com
Email: nlakosil@rgrdlaw.com
Email: rachelj@rgrdlaw.com

Brian Schall
Schall Law Firm
2049 Century Park East Suite 2460 Los Angeles, CA 90067

Brice M. Timmons #29582
DONATI LAW, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 – Telephone
(901) 278-3111 – Facsimile
brice@donatilaw.com

By:   /s/ Daniel A. Horwitz
       DANIEL A. HORWITZ, BPR #032176