RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0009p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

| | | |
|---|---|---|
| NIKKI BOLLINGER GRAE, et al.,<br>*Plaintiffs*,<br><br>*v*.<br><br>CORRECTIONS CORPORATION OF AMERICA, nka CoreCivic; DAMON T. HININGER; DAVID M. GARFINKLE; TODD J. MULLENGER; HARLEY G. LAPPIN, Director,<br>*Defendants-Appellees*,<br><br>MARIE NEWBY,<br>*Intervenor-Appellant*,<br><br>EDDIE TARDY,<br>*Proposed Intervenor*. | ⎫<br>⎬<br>⎭ | No. 22-5312 |

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:16-cv-02267—Aleta Arthur Trauger, District Judge.

Argued: November 15, 2022

Decided and Filed: January 13, 2023

Before: BATCHELDER, GIBBONS, and THAPAR, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Daniel A. Horwitz, HORWITZ LAW, PLLC, Nashville, Tennessee, for Appellant Marie Newby and proposed intervenor Eddie Tardy. Roman Martinez, LATHAM & WATKINS LLP, Washington, D.C., for Appellees. **ON BRIEF AND MOTIONS:** Daniel A. Horwitz, HORWITZ LAW, PLLC, Melissa K. Dix, Nashville, Tennessee, for Appellant Marie Newby and proposed intervenor Eddie Tardy. **ON APPELLEE BRIEF:** Brian T. Glennon, Eric C. Pettis, Michael A. Galdes, LATHAM & WATKINS LLP, Los Angeles, California, Steven A. Riley, Milton S. McGee, III, RILEY & JACOBSON, PLC, Nashville, Tennessee, for Appellees.

Paul R. McAdoo, REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, Washington, D.C., for Amicus Curiae.

THAPAR, J., delivered an order and announced the judgment of the court in which BATCHELDER, J., joined. GIBBONS, J. (pp. 8–15), delivered a separate dissenting opinion.

_____

**ORDER**

_____

THAPAR, Circuit Judge. What started as a securities-fraud action against Corrections Corporation of America (now known as CoreCivic) has turned into a quest for documents. Eddie Tardy seeks to intervene and unseal documents that CoreCivic produced during discovery. Because he lacks standing, we deny his motion.

I.

CoreCivic operates private prisons. Years ago, the company's stockholders brought a class action alleging securities fraud. The company settled that suit, and the district court entered final judgment. The case remained dormant until Marie Newby moved to intervene three months later. Newby believed that documents produced in the securities action would help establish CoreCivic's responsibility for the death of her son in one of its prisons. The district court unsealed most, but not all, of the documents Newby sought. She appealed, but before we could decide her case, she settled with CoreCivic and moved to voluntarily dismiss her appeal. *See* Fed. R. App. P. 42(b). At the same time, Eddie Tardy moved to intervene in this appeal, seeking permission to carry on in Newby's stead. *See* Fed. R. Civ. P. 24(b).

Like Newby, Tardy had a son who died in a CoreCivic prison. But unlike Newby, Tardy waived any claim that the denial of documents in this action hinders his ability to litigate his separate suit against CoreCivic for the death of his son. Reply Br. 5 (ECF No. 36-1) ("[C]ivil litigation is barely even a material consideration here."). In fact, at oral argument, Tardy conceded that he hasn't suffered any adverse effects from the denial of documents. Instead, he seeks to vindicate the public's right of access to judicial records. We must decide whether Tardy

has standing to intervene on the public's behalf, having repeatedly disclaimed any need for the documents himself.

## II.

If the original parties to a case don't appeal the district court's decision, intervenors can in some instances "step into the shoes of the original part[ies]." *Wittman v. Personhuballah*, 578 U.S. 539, 543–44 (2016) (citation omitted). But they must have standing to do so. *Diamond v. Charles*, 476 U.S. 54, 68 (1986). Without that requirement, courts would exceed their Article III authority to decide only "cases" and "controversies."

To stay within those Article III limits, courts must always verify that litigants have suffered an injury in fact that is fairly traceable to the defendant and likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, Tardy hasn't suffered an injury in fact.

For Tardy to have standing, his injury must be concrete and particularized. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). This case concerns the concreteness requirement. Physical and pocketbook injuries easily satisfy this requirement. *Id.* at 2204. Though intangible harms—like the denial of information—may also qualify, we must first look to history to determine whether the harm was traditionally understood as concrete enough to support standing. *Id.*

So let's turn to the history. Our precedent has long recognized a common-law right of public access to court records. *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 163 (6th Cir. 1987) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 473–74 (6th Cir. 1983)). That right flows from the "long-established legal tradition" allowing the public to inspect and copy judicial records. *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (quoting *Knoxville News-Sentinel*, 723 F.2d at 474). Thus, litigants who assert the violation of their right of access to judicial records stand on strong historical ground.

Nevertheless, the mere denial of information is insufficient to support standing. *TransUnion*, 141 S. Ct. at 2214. Precedent confirms this fundamental principle. For example, in *Huff v. TeleCheck Services, Inc.*, 923 F.3d 458, 461 (6th Cir. 2019), the plaintiff sued TeleCheck, which keeps files on consumers' checking history. TeleCheck uses that information to help merchants assess the risk of accepting a customer's check. *Id.* The plaintiff received a report from TeleCheck that omitted information he thought critical, but TeleCheck never told a merchant to decline Huff's checks. *Id.* at 461–62. So the "incomplete report had no effect on [the plaintiff] or his future conduct." *Id.* at 467. Thus, Huff did not have standing because he had not suffered any "adverse consequences." *Id.* at 465.

In a similar case, Judge Katsas cited *Huff* for the proposition that "an asserted informational injury that causes no adverse effects cannot satisfy Article III." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020). Then, in *TransUnion*, the Supreme Court adopted that principle from *Trichell*. *See TransUnion*, 141 S. Ct. at 2214 (quoting *Trichell*, 964 F.3d at 1004).

Since *TransUnion*, the courts of appeals have consistently recognized that, to have standing, a plaintiff claiming an informational injury must have suffered adverse effects from the denial of access to information. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022); *Kelly v. RealPage, Inc.*, 47 F.4th 202, 211–14 (3d Cir. 2022); *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 936–39 (5th Cir. 2022); *Laufer v. Looper*, 22 F.4th 871, 880–81 (10th Cir. 2022); *see also Norvell v. Blue Cross & Blue Shield Ass'n*, No. 19-35705, 2021 WL 5542169, at *1 (9th Cir. Nov. 26, 2021).[1] And courts have further recognized that *TransUnion* did not work

---

[1] The First Circuit took a somewhat different path but did not necessarily disagree with our reading of *TransUnion*. *See Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 268–75 (1st Cir. 2022), *petition for cert. filed,* Case No. 22-429 (Nov. 4, 2022). The First Circuit recognized *TransUnion*'s adverse-effects rule but held that it was bound to follow a prior Supreme Court case that concluded the plaintiff had standing. *Id.* at 271 (discussing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)). Even so, the First Circuit held in the alternative that the plaintiff in *Acheson Hotels* had suffered adverse effects. *Id.* at 274–75.

Recent cases from two other circuits discuss informational injury, but they don't cite, much less grapple with, *TransUnion*. *See Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 788–90 (D.C. Cir. 2022); *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 833 (9th Cir. 2021). And in any case, *Campaign Legal Center* notes that the adverse effects the plaintiffs suffered were identical to the adverse effects in *FEC v. Akins*. *See Campaign Legal Ctr.*, 31 F.4th at 790 ("[I]t is clear, as in *Akins*, 'that the information would help [Appellants] . . . evaluate candidates for public office.'" (alterations in original) (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998))).

a "sea change"—it "simply reiterated the lessons of . . . prior cases: namely, to state a cognizable informational injury a plaintiff must allege that they failed to receive required information, and that the omission led to adverse effects or other downstream consequences." *Kelly*, 47 F.4th at 214 (cleaned up).

Two earlier Supreme Court informational-injury cases are not to the contrary. *See FEC v. Akins*, 524 U.S. 11 (1998); *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440 (1989). The plaintiffs in *Akins* and *Public Citizen* had suffered adverse effects. In *Akins*, voters were denied information that would have helped them "evaluate candidates for public office." 524 U.S. at 21. And in *Public Citizen*, the plaintiffs were denied information that would have helped them "participate more effectively in the judicial selection process." 491 U.S. at 449. Those harms mattered because they transformed what otherwise would have been a "bare procedural violation" of a public-disclosure law into a concrete injury. *See Huff*, 923 F.3d at 467–68 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

So a chorus of precedent all sings the same tune: to have standing, litigants must have suffered adverse effects from the denial of information.

That requirement dooms Tardy's case. At oral argument, Tardy told us he had not suffered any adverse effects. In fact, he admitted that if he were required to allege an adverse effect, he would lose. We take him at his word. *See Taylor v. Pilot Corp.*, 955 F.3d 572, 582 (6th Cir. 2020) (Thapar, J., concurring in part) (controlling opinion) ("Although parties cannot waive arguments *against* jurisdiction, they are more than free to waive (or forfeit) arguments *for* it."). Therefore, Tardy does not have standing to intervene in this appeal.

The dissent argues that *TransUnion*, *Trichell*, and *Huff* are all financial-reporting cases and thus don't affect public-disclosure cases like this one. Dissent at 11. It's true that *TransUnion*, *Trichell*, and *Huff* were financial-reporting cases. But standing is a constitutional principle that applies to all cases. *See Miller v. City of Wickliffe*, 852 F.3d 497, 502 (6th Cir. 2017). And *TransUnion* specifically framed the adverse-effects rule as part of the constitutional inquiry that applies across all cases: "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" 141 S. Ct. at 2214 (quoting *Trichell*, 964 F.3d at 1004).

Other courts read *TransUnion* just as we do and apply the adverse-effects rule in public-disclosure cases. *See Scott*, 49 F.4th at 938 ("Thus, even in public disclosure-based cases, plaintiffs must and can assert 'downstream consequences,' which is another way of identifying concrete harm from governmental failures to disclose."); *see also Harty*, 28 F.4th at 444; *Kelly*, 47 F.4th at 214; *Looper*, 22 F.4th at 880–81. So the standing principles set out in *TransUnion*, *Trichell*, and *Huff* apply here.

The dissent also faults us for not explaining what we mean by "adverse effects." Dissent at 12. But there's no need to do so here, because Tardy conceded at argument that he hasn't alleged any adverse effects at all. And in cases where the issue has been presented, other courts have not found it difficult to define "adverse effects." *See, e.g.*, *Harty*, 28 F.4th at 444 (holding that a plaintiff "must show that he has an interest in using the information beyond bringing his lawsuit" (cleaned up)).

Next, Tardy claims that in *Price v. Dunn* the Supreme Court permitted the intervenors to unseal documents even though they hadn't suffered adverse effects. Not so. In *Price*, National Public Radio and a reporters' association moved to intervene in a headline-grabbing death-penalty case. Mot. for Leave to Intervene to File a Mot. to Unseal at 4, *Price v. Dunn*, 139 S. Ct. 2764 (2019) (Mem.) (No. 18A1238). Why? Because the denial of documents adversely affected their ability to report. *Id.* Thus, *Price* is fully consistent with the adverse-effects rule. And, in any event, *Price* predated *TransUnion*. So we cannot apply *Price* in a way that conflicts with *TransUnion*.[2]

Finally, Tardy contends that we should unseal the documents even if he doesn't have standing. In making this request, he invokes our caselaw permitting a court to sua sponte consider whether to unseal documents. *See, e.g.*, *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 306–07 (6th Cir. 2016) ("A court's obligation to keep its records open for

---

[2] Tardy and the dissent also cite cases from other circuits allowing intervenors to seek documents that were not publicly available. *See Doe v. Pub. Citizen*, 749 F.3d 246, 262–65 (4th Cir. 2014); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994); *Brown v. Advantage Eng'g*, 960 F.2d 1013, 1016 (11th Cir. 1992); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 787 (1st Cir. 1988); *but see Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525–26 (5th Cir. 1994) (holding that intervenors don't have standing to seek document unsealing). But those cases all predate *TransUnion*.

public inspection is not conditioned on an objection from anybody."). Tardy misapplies that caselaw. We may unseal documents "on our own motion" during an ongoing case. *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1176 (6th Cir. 1983). But the underlying case here is no longer ongoing, and we have never held that courts possess the power to unseal documents outside a justiciable case or controversy. That would undermine the separation-of-powers principles that standing protects. *TransUnion*, 141 S. Ct. at 2203. Under Article III, federal courts may adjudicate only cases or controversies; yet Tardy would turn us into a "roving commission" in search of documents to unseal. *Id.* The Constitution prevents any such freewheeling inquiry. No matter how important the public's right to access judicial records, we may adjudicate only "a real controversy with real impact on real persons." *Id.* (quoting *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2103 (2019) (Gorsuch, J., concurring in the judgment)). And absent any alleged adverse effects, this isn't such a controversy.

Accordingly, Tardy's motions to intervene and file a reply brief are denied. Newby's motion to dismiss the appeal is granted.

---

### DISSENT

---

JULIA SMITH GIBBONS, dissenting.  The majority holds that a member of the public suffers no injury when denied access to documents on a court's docket absent "adverse effects." Maj. Op., at 5.  Because the majority's analysis fails to heed the Supreme Court's decisions in *Public Citizen v. United States Department of Justice*, 491 U.S. 440 (1989), and *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), and reaches a result that puts us at odds with our sister circuits, I respectfully dissent.

In *Public Citizen*, the plaintiffs sought information pursuant to the Federal Advisory Committee Act (FACA) about the Department of Justice's collaboration with the American Bar Association in the selection of judicial nominees.  *See* 491 U.S. at 447-48.  The Supreme Court held that "refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449. The Court further explained that its "decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they have sought and were denied specific agency records." *Id.* (citing cases).  There was "no reason" to apply a different rule in the FACA context. *Id.*  The Court also rejected the argument that the plaintiffs were complaining of a mere "generalized" grievance because they had not shown how denial of the information harmed them specifically—the same argument CoreCivic makes, and the majority accepts, here.  *See id.* at 448-450.

Similarly, in *Akins*, the plaintiffs sought information about an organization's political activities that they contended the Federal Election Campaign Act (FECA) required be made public.  *See* 574 U.S. at 15-16.  The Supreme Court held that those plaintiffs had shown an "informational injury" sufficient to confer Article III standing.  *Id.* at 25.  That injury "consist[ed] of their inability to obtain information . . . that . . . the statute requir[ed] that [the organization] make public." *Id.* at 21.  The Supreme Court again explicitly rejected the argument that the plaintiffs were complaining of a mere "generalized" grievance.  *Id.* at 23.

Here, all agree that Tardy "sought" and "[was] denied specific . . . records." *Public Citizen*, 491 U.S. at 449. As *Public Citizen* made clear, that is all that Article III requires where a litigant seeks to vindicate a statutory right of public access to information. And there is no reason to apply a more demanding standard to litigants seeking to vindicate the public's common-law right of access to judicial records. Tardy therefore has standing.

The majority distinguishes *Public Citizen* and *Akins* because the plaintiffs there would have used the information to "evaluate candidates for public office," Maj. Op., at 5 (quoting *Akins*, 524 U.S. at 21), and "participate more effectively in the judicial selection process," *id.* (quoting *Pub. Citizen*, 491 U.S. at 449), and the majority says that Tardy fails to offer any similar explanation as to how the denial of information harms him. Contrary to the majority's interpretation, neither *Public Citizen* nor *Akins* suggests that a litigant seeking to vindicate the public's right of access to information must explain how he will use that information. Instead, *Public Citizen* expressly holds that such litigants "need show [no] more than that they have sought and were denied" the information to which the public right of access applies. 491 U.S. at 449.

Moreover, the statements from *Public Citizen* and *Akins* on which the majority relies only restate at the most general level the rationale for the relevant public right of access. The purpose of the FECA disclosure requirements in *Akins* was to allow citizens to "evaluate candidates for public office," 524 U.S. at 21, while the purpose of FACA's disclosure requirements in *Public Citizen* was to allow citizens to "participate more effectively" in public processes to which the disclosures were relevant, 491 U.S. at 449. Here, the rationale for public access to documents on a court's docket includes such interests as understanding the basis for a judicial ruling and monitoring the judiciary to prevent corruption. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). Throughout this litigation, Tardy has maintained that those interests apply in this case. *See, e.g.*, Reply Br., at 2 (quoting *Shane Grp.*, 825 F.3d at 305). So even if *Public Citizen* and *Akins* could be read to require a litigant to recite some generic rationale for the public right of access he seeks to vindicate, Tardy has done that here.

In holding that Tardy lacks standing, the majority relies entirely on a single sentence from *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021) (internal quotation marks

omitted): "An asserted informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion* is a credit-reporting case in which the plaintiffs argued that they received their personal information in the wrong format, *see id.*, rather than a case in which a litigant sought to vindicate a right of access to information to which the public was entitled.  Nevertheless, and despite also saying that *TransUnion* did not work a "sea change," Maj. Op., at 4–5 (quoting *Kelly v. RealPage, Inc.*, 47 F.4th 202, 211-214 (3d Cir. 2022)), the majority treats *TransUnion* as if it overruled *Public Citizen* to the extent that *Public Citizen* enumerated the exclusive requirements for standing in cases where a litigant seeks to vindicate a public right of access to information. 491 U.S. at 449.[1]

*TransUnion* did no such thing.  Instead, and shortly before the sentence on which the majority relies, *TransUnion* distinguished *Public Citizen* and *Akins* on the grounds that "those cases involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information."  141 S. Ct. at 2214.  At best, *TransUnion* is ambiguous as to whether its adverse-effects requirement applies to "public-disclosure or sunshine laws," as recently noted by another court addressing the issue of standing in such a context.  *See Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 938 (5th Cir. 2022) ("Consequently, *Akins* and *Public Citizen*, on one reading of *Spokeo* and *TransUnion*, may dispense with 'downstream consequences' on the earlier cases' reasoning that the nondisclosure violation alone creates concrete injury.").  Rather than assume that the Supreme Court silently overruled *Public Citizen* without instruction to do so, I would adopt the reading of *TransUnion* that avoids conflict with the Supreme Court's longstanding precedent: *Public Citizen* and *Akins* govern when plaintiffs seek information pursuant to a public right of access, while *TransUnion* governs certain other theories of informational injury.  *See Kelly v. RealPage Inc.*, 47 F.4th 202, 212 (3d Cir. 2022) ("*TransUnion* did not cast doubt on the broader import of [*Public Citizen*] and [*Akins*].  In fact, the Court cited [those cases] with approval, reaffirming their continued viability and putting *TransUnion* in context.")

---

[1]In the same vein, the majority dismisses the nearly unanimous views of our sister circuits in cases addressing the issue before us, discussed in more detail below, on the sole ground that those cases "predate *TransUnion*."  Maj. Op. at 7 n.2.

Most of the "chorus of precedent" that the majority cites does not support the conclusion it reaches today. Maj. Op., at 5. The majority cites several credit-reporting cases that, like *TransUnion* itself, expressly distinguish between the public-access context and the credit-reporting context. *See id.* (citing *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020), *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 467 (6th Cir. 2019), and *Kelly*, 47 F.4th at 812). The majority also cites cases in which a "tester" with no intention of visiting a facility sought information about the facility's compliance with the Americans with Disabilities Act pursuant to regulatory requirements. *See id.* (citing *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) and *Laufer v. Looper*, 22 F.4th 871, 880-81 (10th Cir. 2022)). Because those cases did not involve "public-disclosure or sunshine laws" like the ones at issue in *Public Citizen* and *Akins*, they had no occasion to address whether *TransUnion* overruled those earlier cases and introduced a new requirement for standing in the public-access context.

The majority cites only one case applying an "adverse effects" requirement where a litigant sought to vindicate a public right of access. *See id.* (citing *Scott*, 49 F.4th at 938). In *Scott*, the Fifth Circuit (like the majority today) did not discuss *Public Citizen*'s express holding that public-access litigants have standing if they "sought and were denied" the information they seek. 491 U.S. at 449. Thus, although the Fifth Circuit acknowledged *TransUnion*'s ambiguity, as discussed above, it adopted the same reading of *TransUnion* the majority adopts now. *See Scott*, 49 F.4th at 938. I would not follow the Fifth Circuit's opinion in *Scott* for the same reasons as I respectfully dissent from the majority's opinion today. Moreover, even if there were some "adverse effects" requirement in the public-access context, *Public Citizen* and *Akins* show that it could not preclude Tardy's standing here. That is because Tardy articulated the injury he suffers at the same level of generality as did the plaintiffs in those cases, as discussed in more detail above.

Perhaps unsurprisingly, then, none of our sister circuits that have considered the issue of intervenor standing to seek unsealing of documents on a court's docket has reached the conclusion that the majority reaches here. Two circuits have held that intervenors have standing to vindicate the public's First Amendment right of access to judicial records. *See Doe v. Pub. Citizen*, 749 F.3d 246, 262-65 (4th Cir. 2014); *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013,

1016 (11th Cir. 1992). Two other circuits have held that intervenors have standing to seek modification of discovery-related protective orders, suggesting *a fortiori* that they would also have standing to seek unsealing of documents on a court's docket. *See Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 787 (1st Cir. 1988); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994).

To be sure, the Fifth Circuit says that intervenors lack standing to seek unsealing in situations like this one where the underlying case is closed. *See Newby v. Enron Corp.*, 443 F.3d 416, 421-22 (5th Cir. 2006) (citing *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 522 (5th Cir. 1994)). *Deus*, the Fifth Circuit case that so holds, mentions neither Article III nor the requirement of an injury-in-fact, and instead apparently uses the term "standing" loosely to invoke some personal interest relevant to the intervention analysis under Federal Rule of Civil Procedure 24. *See* 15 F.3d at 25-26. *Deus* also predates *Akins*. Moreover, unlike the majority today, the Fifth Circuit also holds that intervenors have standing to vindicate the public right of access to information by seeking unsealing in cases that are still pending. *Newby*, 443 F.3d at 421-22. The majority's opinion therefore makes this circuit the only one to hold that intervenors categorically lack standing to vindicate the public right of access to information.

The majority does not explain at what level of specificity future litigants will have to show "adverse effects" to challenge nondisclosure where a public right of access applies. If future panels follow *Public Citizen* and *Akins*, then the intervenor's burden will be easily met, and the harm limited to this case. If the majority's view instead requires a more specific showing, an obvious problem arises. How can a member of the public, unfamiliar with the contents of a sealed judicial record, establish how the failure to disclose that record harms him? Such an exercise will inherently require the kind of "speculation" that does not satisfy Article III. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 567 (1992). Thus, although all agree that the public right of access to judicial records is deeply rooted in Anglo-American history and tradition, the majority's holding suggests that the Constitution prevents any specific member of the public from vindicating that right. Because the majority's view conflicts with the Supreme Court's cases applying Article III in the public-access context, I respectfully dissent.