## No. 22-5312

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nikki Bollinger Grae, Luvell L. Glanton; Amalgamated Bank, as Trustee for the
LongView Collective Investment Fund,

*Plaintiffs-Appellees*,

and

Marie Newby,

*Proposed Intervenor-Appellant*,

v.

Corrections Corporation of America, *et al.*,

*Defendants-Appellees*.

On Appeal from United States District Court for the Middle District of Tennessee,
No. 3:16-cv-2267

### RESPONSE OF DEFENDANT-APPELLEE CORRECTIONS CORPORATION OF AMERICA TO PETITION FOR REHEARING OR REHEARING EN BANC

Brian T. Glennon
Eric C. Pettis
Michael A. Galdes
LATHAM & WATKINS LLP
355 S. Grand Ave.
Suite 100
Los Angeles, CA  90071
(213) 485-1234

Steven A. Riley
Milton S. McGee, III
RILEY & JACOBSON, PLC
1906 West End Ave.
Nashville, TN  37203
(615) 320-3700

Roman Martinez
Christina R. Gay
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2207

*Counsel for Defendant-Appellee CoreCivic, Inc.*
*f/k/a Corrections Corporation of America*

# INTRODUCTION

The panel in this case reached a straightforward and commonsense conclusion:  A plaintiff who *affirmatively concedes that he has suffered no adverse consequences* from an alleged legal violation lacks Article III standing.  That result is dictated by decades of precedent from the Supreme Court and this Court, most recently reflected in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), and *Huff v. TeleCheck Services, Inc.*, 923 F.3d 458 (6th Cir. 2019).  It also accords with the views of every other court of appeals to address similar circumstances after *TransUnion*.  The panel was right and its decision should stand.

Proposed Intervenor Eddie Tardy argues that Article III's concrete harm requirement is automatically satisfied—for any member of the public, anywhere—whenever the case involves the denial of the public's right to *information* filed on a court's docket.  But *TransUnion* could not be clearer:  "An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'"  141 S. Ct. at 2214.  Tardy has no persuasive answer to this unambiguous statement of law.  And Tardy is wrong to suggest that *TransUnion*'s holding contradicts the Supreme Court's prior decisions in *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. United States Department of  Justice*, 491 U.S. 440 (1989), as the panel made clear.

Tardy also claims that the panel's decision will lead to "catastrophic" follow-on effects, such as insulating sealing decisions from *any* judicial review, and even (somehow) banning books. That's just wrong—the sky is not falling. The panel's decision is narrow and turned on Tardy's repeated concessions that he has suffered zero adverse consequences from his inability to obtain the information he seeks. Op. 5. In the vast majority of situations where an intervenor seeks access to court documents—including all the key cases Tardy cites—the intervenor will have a sufficient reason for needing access. As even the dissent appeared to recognize, future plaintiffs with concrete interests at stake will readily have standing under the panel's ruling. Dissent 12. Tardy's petition should be denied.

## BACKGROUND

1. This case began as a securities class action against CoreCivic. The District Court dismissed that action pursuant to a settlement in 2021, after more than five years of litigation. Final Judgment, R. 479, Page ID #25425 (¶ 5). Intervenors' counsel waited more than three months after dismissal to seek intervention on behalf of one client (Marie Newby) for the purpose of unsealing the record, and when she resolved her separate dispute with CoreCivic, he then filed a motion to intervene on behalf of Tardy. Op. 2.

Tardy made clear that his purpose in intervening was to vindicate the general "right of access to court filings," which he conceded "is a 'public' right that does not

belong to any individual litigant." ECF No. 1; *see also id.* at 2, 4-5. CoreCivic challenged Tardy's Article III standing, arguing that asserting a public right does not automatically create standing. ECF No. 35 at 2-4. Tardy replied by reasserting his desire to vindicate public rights, stating that he—"like any other member of the public who is foreclosed from accessing the thousands of pages of improperly sealed judicial records in this case"—had a right to intervene. ECF No. 36-1 at 6.

At oral argument, the panel zeroed in on Tardy's disclaimer of any personal interest in the case, apart from interests shared by all members of the public. Three different times, the panel asked Tardy's counsel whether Tardy himself suffered any "adverse consequences" from being denied access to the sealed documents. Each time, counsel either denied that such consequences were required or conceded that he had suffered none:

> **Judge Thapar:** I'm just trying to understand what adverse consequences you've alleged to have suffered as a result of being denied this information?
>
> **Counsel:** The question is not, at least in our view, adverse consequences.
>
> *    *    *
>
> **Judge Thapar:** [A]part from being denied access to the documents, what adverse consequences have you alleged?
>
> **Counsel:** I don't believe we have alleged adverse consequences other than not being able to exercise a common law right to access, review, and then disseminate the information that is in these sealed judicial records.

3

*    *    *

**Judge Thapar:** "You have not alleged any adverse consequences, correct?

**Counsel:** Not adverse consequences in terms of damages to Mr. Tardy, no.

Oral Argument at 1:41-3:50; 6:50-6:59.

The panel also specifically asked if Tardy's counsel would concede defeat if follow-on harm from the sealing was required. Counsel candidly agreed that such a requirement would be fatal to Tardy's claim:

**Judge Thapar:** So if [adverse consequences are] a requirement, you lose, correct?

**Counsel:** Yes, your honor, I think that would be correct.

*Id.* at 6:59-7:58. Tardy's counsel did not retract these concessions in his rebuttal or subsequent Rule 28(j) letter, even after CoreCivic's counsel repeatedly referenced them during his own argument. *See id.* at 12:39-12:57; 16:41-17:17

2. On January 20, 2023, the panel held that Tardy lacked Article III standing. The panel explained that a plaintiff claiming informational injury "must have suffered adverse effects from the denial of access to information." Op. 5. It grounded this requirement in *TransUnion* and *Huff v. TeleCheck Services*, 923 F.3d 458 (6th Cir. 2019), both of which held that the mere denial of information, without "adverse consequences," is insufficient to support standing. Op. 4. It also noted that

the Eleventh Circuit had cited *Huff* in a similar case for the proposition that "an asserted informational injury that causes no adverse effects cannot satisfy Article III," and that the Supreme Court had expressly adopted *Trichell*'s analysis in *TransUnion*. *Id.* at 4 (quoting *Trichell v. Midland Credit, Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

The panel went on to explain why two earlier Supreme Court informational-injury cases—*Akins* and *Public Citizen*—are not to the contrary. Op. 5. The plaintiffs in those cases *had* suffered adverse consequences from their inability to access information, which transformed what otherwise would be a "'bare procedural violation' of a public-disclosure law into a concrete" harm. *Id.* Putting this together, the panel explained that a "chorus of precedent all sings the same tune": To have standing, a litigant must have suffered "adverse effects" from the denial of information. *Id.*

The panel then explained why that requirement dooms Tardy's case: "At oral argument, Tardy told us he had not suffered any adverse effects. In fact, he admitted that if he were required to allege an adverse effect, he would lose." *Id.* And because the panel was bound to "take him at his word," Tardy lacked standing. *Id.*

Because of the concession, the panel had no need to expand on what sort of "adverse effects" would trigger Article III. *Id.* at 6. But the panel recognized that in

cases where the issue *has* been properly presented, other courts had "not found it difficult" to find standing.  *Id*.

Judge Gibbons dissented, arguing that seeking and being denied access to information is enough to establish standing, despite *TransUnion*.  Dissent 9.  She acknowledged, however, that the effect of the panel's ruling could be limited, insofar as "the intervenor's burden [to show adverse consequences] will be easily met" under the standards in *Akins* and *Public Citizen*.  *Id.* at 12.

3.  After the panel issued its decision, Tardy's counsel made various public statements on Twitter denouncing the ruling as "nuts" and "crazy."[1]  Counsel also confessed to having "botched" the case, because the panel's decision means that a litigant "somehow need[s] to show adverse downstream consequences to have standing to seek information."[2]  And he issued multiple public calls for amici to support his rehearing petition.[3]

## ARGUMENT

En banc review is an "extraordinary procedure" for addressing "a precedent-setting error of exceptional public importance or an opinion that directly conflicts with Supreme Court or Sixth Circuit precedent."  6th Cir. I.O.P. 35(a).  Here, though,

---

[1]  https://perma.cc/KHB3-GUZK; https://perma.cc/LRJ5-SVML.

[2]  https://perma.cc/EF5W-BZJE.

[3]  https://perma.cc/KHB3-GUZK; https://perma.cc/3E64-ML9F; https://perma.cc/4GZN-C9LM.

the panel's decision faithfully applies *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), and is otherwise consistent with decades of precedent from the Supreme Court and this Circuit.  Nor does the decision justify rehearing based on "exceptional public importance."  As the panel made clear, the narrow ruling turned on Tardy's unusually candid concession that he has suffered no adverse consequences from the sealing orders at issue.  Op. 5.  The decision will have no adverse impact on sealing litigation generally, because in virtually all cases intervenors *will* properly allege adverse consequences.  Tardy's petition should be denied.

## I.    THE PANEL DECISION IS CORRECT

The panel properly applied *TransUnion* and other precedent to hold that Tardy lacked Article III standing.  Tardy's arguments, by contrast, would require the Court to ignore *TransUnion* and create a circuit split.

### A.    Supreme Court And Sixth Circuit Precedent Establish That Denials Of Information Creating No Adverse Effects Do Not Create Article III Standing

1.  The panel correctly held that Tardy lacked standing to intervene on the public's behalf to challenge the district court's sealing, because he failed to allege that those orders inflicted any concrete "adverse effects" on him personally.  Op. 5.  That decision follows directly from *TransUnion*, which expressly rejected the freestanding informational injury theory Tardy presses.

In *TransUnion*, plaintiff-consumers argued that a credit-reporting agency

failed to provide them with information in their credit files, allegedly in violation of the Fair Credit Reporting Act (FCRA). 141 S. Ct. at 2213. The United States filed an amicus brief arguing that the denial of information *itself* automatically qualified as a cognizable injury. *TransUnion* U.S. Br. 21-26. As authority, the Solicitor General invoked *Public Citizen*, where the Supreme Court held that an advocacy group had Article III standing to challenge the government's refusal to disclose information about prospective judicial nominees under the Federal Advisory Committee Act. 491 U.S. at 448-50. The Solicitor General also cited *Akins*, where the Court upheld a group of voters' standing to challenge the Federal Election Commission's refusal to compel disclosure of information about a political group under the Federal Election Campaign Act. 524 U.S. at 21-25.

*TransUnion* ultimately held that the consumers lacked Article III standing to enforce FCRA's disclosure requirement. 141 S. Ct. at 2213. In doing so, the Court expressly rejected the Solicitor General's "informational injury" theory based on *Public Citizen* and *Akins*, for three independent reasons. *Id.* at 2214. First, it determined that the *TransUnion* plaintiffs did not allege that they failed to receive information, but only that they received it "*in the wrong format*." *Id.* Second, the Court determined that the case did not involve the alleged violation of a law that actually entitled "all members of the public to certain information." *Id.*

Third—and most importantly for this case—the Court determined that the

plaintiffs had not identified any "'downstream consequences' from failing to receive the required information." *Id.* (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). The Court held that "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* (quoting *Trichell*, 964 F.3d at 1004).

*TransUnion*'s analysis of that critical third point expressly adopted Judge Katsas's opinion for the Eleventh Circuit in *Trichell*. There, the Eleventh Circuit held that a plaintiff challenging the denial of information must identify "downstream consequences" in order to have standing. *Trichell*, 964 F.3d at 1004. The court explained that this holding was consistent with *Public Citizen* and *Akins* because those plaintiffs *had* "identified consequential harms from the failure to disclose the contested information." *Id.* (noting that *Public Citizen* plaintiffs sought access to records that would help them "participate more effectively in the judicial selection process" and that *Akins* plaintiffs needed the information to "evaluate candidates for public office"). Because the *Trichell* plaintiffs did not identify any comparable "adverse effects" from the denial of information, they lacked standing under both cases. *Id.*

2. The panel's embrace of this adverse-consequences rule also follows directly from this Court's precedent. In *Huff v. TeleCheck Services, Inc.*, this Court held that an unlawful deprivation of information cannot create Article III standing if

it "carries no actual consequences for the [plaintiff]." 923 F.3d 458, 467 (6th Cir. 2019). As in *Trichell*, this Court interpreted *Public Citizen* and *Akins* to require that the denial of information have actual "effect on [the plaintiff] or his future conduct." *Id.* Indeed, *Trichell* cited *Huff* when holding that "an asserted informational injury that causes no adverse effects cannot satisfy Article III." 964 F.3d at 1004.

Other circuits have reached the same conclusion. As the panel recognized, since *TransUnion* the courts of appeals have unanimously held that, to have standing, a plaintiff claiming an informational injury must have suffered adverse effects from being denied the information at issue. Op. 4; *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (4th Cir. 2022); *Kelly v. RealPage Inc.*, 47 F.4th 202, 212-14 (3rd Cir. 2022); *Campaign Legal Center v. Scott*, 49 F.4th 931, 936-39 (5th Cir. 2022); *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022); *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 789-90 (D.C. Cir. 2022); *see also Norvell v. Blue Cross & Blue Shield Ass'n*, 2021 WL 5542169, at *1 (9th Cir. Nov. 26, 2021).

Neither Tardy nor the dissent have cited a *single* precedential post-*TransUnion* court of appeals decision holding otherwise. Pet. 3-4 (citing cases predating *TransUnion*); Dissent 11-12 (same).[4] And Tardy's reliance on pre-

---

[4]    As the dissent acknowledges, circuits were split over whether intervenors had standing to seek unsealing before *TransUnion*. Dissent 11-12. But *TransUnion*'s direct treatment of informational injuries clarified the law and resolved that split.

*TransUnion* cases like *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014), *see* Pet. 3; Suppl. Br. 16; Oral Argument at 4:28-6:44, simply proves the panel's point. In *Doe*, the Fourth Circuit applied the exact same interpretation of *Public Citizen* and *Akins* that the Supreme Court *repudiated* in *TransUnion*. *See* 749 F.3d at 263-64.

3.  The adverse-consequences rule embraced by *TransUnion*, *Trichell*, and *Huff* is fatal to Tardy's standing. Op. 5. None of the five briefs Tardy has filed in this Court identifies any personal harm he has suffered due to his inability to access the sealed information. Even more importantly, Tardy expressly conceded at oral argument—*three times*—that he has suffered no such "adverse effects." Oral Argument at 1:32-3:31, 6:50-6:58. He also conceded that "if he were required to allege an adverse effect, he would lose." Op. 5; Oral Argument at 6:55-7:55.

Tardy's failure to allege any sort of tangible injury flowing from the sealing orders—separate and apart from the orders themselves—defeats his standing. There is no basis to second-guess the panel's straightforward application of *TransUnion* to the particular facts of this case, and certainly no basis for creating a circuit split over what *TransUnion* means.[5]

---

[5]  *See, e.g.*, *Snyder-Hill v. Ohio State Univ.*, 54 F.4th 963, 967, 969 (6th Cir. 2022) (Moore, J., concurring in denial of rehearing en banc) (rehearing improper where petitioner's view would create a circuit split).

**B.    Tardy's Arguments Lack Merit**

All of Tardy's contrary arguments are baseless.  First, Tardy argues that *TransUnion* was limited to claims for "money damages."  Pet. 10-11.  But as the panel recognized, *TransUnion* specifically framed the adverse-effects rule as part of the constitutional inquiry that applies across *all* cases:  "[A]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'"  Op. 5 (quoting 141 S. Ct. at 2214).  If the Supreme Court meant to limit that legal principle to claims for "money damages," it would have said so.  Tardy, in any event, offers no rationale for confining that principle to the exact facts of *TransUnion*.

Tardy similarly asserts (at 11-12) that *TransUnion*'s adverse-effects rule does not apply to cases regarding public-disclosure laws.  For support, he points to *TransUnion*'s second basis for dismissing the United States' "informational injury" theory: that *TransUnion* did not involve the denial of information pursuant to a law that "entitle[s] all members of the public to certain information."  141 S. Ct. at 2214.  But Tardy again ignores that the Court gave additional—and independently sufficient—rationales for rejecting the Solicitor General's argument.  Indeed, *TransUnion*'s very next sentence states that, "[m]oreover, the [*TransUnion*] plaintiffs have identified no 'downstream consequences' from failing to receive the required information."  *Id.* (emphasis added) (quoting *Trichell*, 964 F.3d at 1004).  The Court then hammered home the key point, with no caveats:  "An 'asserted

informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* (same). That the Court again quoted *Trichell* only fortifies the analysis: Even in public-disclosure cases, a plaintiff must allege downstream consequences.

Next, Tardy suggests (at 12) that, because the right to receive information is a "constitutional right," violation of it alone can establish standing. But neither the Supreme Court nor this Circuit has held that there is a *constitutional* right to access court documents in civil cases; instead, both have grounded such right in the common law. *See* Op. 3; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). In any event, "an injury in *law* is not an injury in *fact*" as required by Article III. *TransUnion,* 141 S. Ct. at 2205 (emphasis added). To establish an injury in *fact,* Tardy needed to show that he suffered an injury "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 2204. And although that category "may" include certain harms "specified by the Constitution itself," *id.*, Tardy has not shown that the deprivation of access to court records has ever triggered a right of action belonging to third parties who suffered no harm as a result. *See, e.g.*, *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974) ("[S]tanding to sue may not be predicated upon an interest . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share.").

Left grasping at straws, Tardy argues (at 12, 16) that this Court must review sealing decisions sua sponte even if *no* litigant had standing. As the panel recognized, that argument would "undermine the separation-of-power principles that standing protects" and turn this Court into a "'roving commission'" in search of documents to unseal. Op. 7. The Constitution squarely prevents that. *See TransUnion*, 141 S. Ct. at 2203. Tardy's cases simply recognize that a court may unseal documents on its own motion *during an ongoing case* between parties with standing. *See, e.g., Rudd Equip. Co. v. John Deere Constr. & Foresty Co.*, 834 F.3d 589, 595 (6th Cir. 2016).

Finally, Tardy suggests (at 16) that he does not need standing because the original plaintiffs—who are no longer in this case—had standing at an earlier point. That is dead wrong. An intervenor seeking relief beyond what the plaintiff requests "must have standing under Article III." *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019). Tardy lacks such standing here.

## II.    THE PANEL DECISION IS NARROW AND TURNS ON TARDY'S CONCESSIONS

Tardy claims that rehearing is warranted because the panel's ruling will have "catastrophic effects on all manner of informational and public-disclosure claims—from sealing, to FOIA, to courtroom closure, to gag orders." Pet. 4. He even predicts that under the panel's decision, if the government opted to ban controversial books,

*no* prospective reader would have standing to contest that ban. *Id.* at 14. All this is nonsense.

The panel's decision was narrowly tailored to the facts of this case. Although the panel relied on *TransUnion*'s categorical statement that "'[a]n "asserted informational injury that causes no adverse effects cannot satisfy Article III,"'" it did not purport to define what "adverse effects" qualify under that standard. Op. 5. Rather, the panel noted that "there's no need to [explain what we mean by 'adverse effects'] here, because Tardy conceded at argument that he hasn't alleged any adverse effects at all." *Id.* at 6. Nothing in the panel's decision has any implications whatsoever for sealing, FOIA, or gag order cases where a plaintiff explains how he has suffered harm—and certainly not for book-banning.

If anything, the panel's analysis suggests that the adverse-consequences test will not be difficult to satisfy. For one thing, the panel appeared to endorse the Second Circuit's holding that a plaintiff need only show "that he has an interest in using the information beyond bringing his lawsuit." *Id.* (quoting *Harty*, 28 F.4th at 444). More importantly, the panel recognized that *Public Citizen* and *Akins* remain good law, even after *TransUnion*. *Id.* at 5. And in those cases, the plaintiffs simply alleged that they would use information to participate in the political process—a relatively low bar. Moreover, even the dissent acknowledged that so long as *Public Citizen* and *Akins* are not overruled, the panel decision could be "limited to this

case." Dissent 12. Indeed, the panel harmonized *TransUnion* with *Public Citizen* and *Akins* and relied heavily on Tardy's express concessions of no personal harm.

Tardy declares that under the panel's opinion, no litigant will ever have standing to challenge a sealing decision. Pet. 14. Not so. As Judge Ho has explained, "*TransUnion* may not ultimately prove all that difficult for plaintiffs who wish to assert their statutory rights to public information. After all, it's hard to imagine a plaintiff who is willing to go through the trouble to file a lawsuit to obtain public information—yet is unable to attach a simple affidavit noting why the plaintiff needs that information." *Scott*, 49 F.4th at 940 (Ho, J., concurring in judgment). Most plaintiffs who seek public information will have actual concrete interests at stake.

Tardy has not identified any real-world situation in which the panel's holding will interfere with legitimate efforts to obtain documents for a valid purpose. For example, Article III standing will plainly exist for newspapers and media organizations who seek sealed material to accurately report on judicial proceedings; in such cases, denying access will directly impede their ability to report the news. Indeed, virtually all of the cases Tardy cites involve intervenors who would have standing under the panel's approach.[6] The narrow reach of the panel's holding is

---

[6] *See, e.g.*, *Price v. Dunn*, 139 S. Ct. 2764 (2019) (media organizations could not report on death-penalty case); *Doe*, 749 F.3d at 263 (public-interest

presumably why the journalists who filed an amicus brief supporting Newby's unsealing request, ECF No. 27, have conspicuously declined to support Tardy's rehearing petition.

This case is unique—and unlike every other case Tardy cites—because Tardy expressly conceded that the sealing orders at issue inflict no adverse consequences on him personally. Oral Argument at 1:32-3:31, 6:40-7:55. As Tardy has forthrightly maintained, his only purpose here is to vindicate a "public right" that "does not belong to any individual litigant." ECF No. 31-1 at 1. This is precisely the situation in which an intervenor does *not* have standing. The panel's narrowly cabined ruling to that effect faithfully applies *TransUnion* and should not be disturbed.

---

organizations sought to "advocate directly on the issues to which the underlying litigation and the sealed materials relate"); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 776-77 (3rd Cir. 1994) (newspaper suffered "distinct and palpable injury" when protective order inhibited its ability to receive documents under Pennsylvania's Right to Know Act); *United States v. Cianfrani*, 573 F.2d 835, 845-58 (3d Cir. 1978) (press was barred from attending proceedings in criminal trial of politician).

## CONCLUSION

For the foregoing reasons, the Court should deny Tardy's petition.

Dated:  February 10, 2023

Respectfully submitted,

*/s/ Roman Martinez*

Brian T. Glennon
Eric C. Pettis
Michael A. Galdes
LATHAM & WATKINS LLP
355 S. Grand Ave.
Suite 100
Los Angeles, CA  90071
(213) 485-1234

Roman Martinez
Christina R. Gay
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2207
roman.martinez@lw.com

Steven A. Riley
Milton S. McGee, III
RILEY & JACOBSON, PLC
1906 West End Ave.
Nashville, TN  37203
(615) 320-3700

*Counsel for Defendant-Appellee CoreCivic, Inc.*
*f/k/a Corrections Corporation of America*

### CERTIFICATE OF COMPLIANCE WITH RULE

Pursuant to Federal Rules of Appellate Procedure 35(e) and 40(a)(3), and the Court's Letter dated January 27, 2023, I hereby certify that the foregoing complies with the type-volume limitation because it contains 3,893 words, excluding the exempted parts under Federal Rule of Appellate Procedure 32(f).  The foregoing has been prepared in a proportionally spaced typeface using Times New Roman in 14 point size.

Dated: February 10, 2023                           */s/ Roman Martinez*
                                                   Roman Martinez

## CERTIFICATE OF SERVICE

I, Roman Martinez, hereby certify that on February 10, 2023, the foregoing was electronically filed with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system, which will send notice to all registered CM/ECF users.  Participants in the case are registered CM/ECF users and will be served by the CM/ECF system

/s/ Roman Martinez
Roman Martinez